UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRIAN BELL,

     Plaintiff,

       v.

O'REILLY AUTO ENTERPRISES, LLC d/b/a
O'REILLY AUTO PARTS,

     Defendant.

Civil Action No.  1:16-cv-00501-JDL

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant never considered Bell's requested reasonable accommodation before terminating his employment. Instead, years later, Defendant responds to Bell's requested accommodation for the first time and argues that no reasonable jury could find that the accommodation was reasonable. Defendant also argues that every reasonable jury would conclude that being scheduled to work in the store for more than 45 hours per week is an essential function of the Store Manager job. Defendant's arguments are contradicted by the evidence in the record and its own admissions. The timing, pretext, and bad faith set out in the facts also evidence that Bell's disabilities and requests for accommodation were a factor in Defendant's adverse actions. The Motion should be denied.[1]

---

[1] Defendant's Motion violates the cardinal rule of summary judgment. The Motion is based on disputed and contradicted facts and so should be denied. See POSMF ¶¶ 4, 28-32, 34-35, 62-65, 71, 77-82, 84, 92, 94-95, 97-99, 102. On a motion for summary judgment, the court "must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-151 (2000) (internal citation omitted). "It must disregard all evidence favorable to the moving party that the jury is not required to believe," particularly evidence that is contradicted or impeached by the nonmoving party and evidence that comes from interested witnesses. *Id.* In contrast, the court must "give credence to the evidence favoring the non-movant," and may only grant a motion for summary judgment "if the evidence, when taken in a light most favorable to the non-movant, is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome." *St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis*, 262 F.3d 53, 61 (1st Cir. 2001).  Defendant's Motion is premised on disputed facts (See POSMF ¶¶ 1, 12-15, 17, 36-37, 39-40, 44, 49, 53) and, as set out below, is premised on the disputed claims that working more than 45 scheduled hours per week or any specific hourly availability was an essential function of the job and that Bell requested that his total hours be capped at 45 without flexibility to work more.

1

Bell performed his Store Manager job well for ten months. He grew sales and posted the first profitable months for the Belfast store. His average schedule was forty six hours per week. He was ready and able to work additional unscheduled hours as necessary but found that on average he only spent about 15-30 minutes per week of unscheduled time. With respect to his scheduled hours, Bell was doing what all the other staff did, namely, providing customer service and ensuring sufficient staffing levels. Furthermore, it was not necessary for Bell to be at the store to open, close, or lead as these duties were also performed by the Assistant Manager and Key Holder. Things were good at the Belfast store until staffing levels dropped in May 2015 leaving the store temporarily short staffed.  Bell requested that Watters approve overtime for other employees to help cover the holes in the schedule and Watters said "no".  As a result, Bell worked open to close, day after day. The stress associated with the schedule and the lack of adequate time to rest exacerbated the symptoms of Bell's disabilities, and bad behavior by Watters pushed Bell over the edge.

Bell and his medical provider subsequently requested the reasonable accommodation of a schedule limited to nine hours per day, five days per week with the ability to work additional hours as necessary on occasion. The purpose of the accommodation was to address the unusual situation where Bell needed to schedule other staff to help cover holes in the schedule. Defendant just needed to permit Bell to schedule other staff in the unlikely event that a situation like what happened in May 2015 happened again. Defendant admittedly never considered or evaluated the requested accommodation.  Instead, despite Bell repeatedly clarifying to Defendant's managers, verbally and in writing, that the accommodation requested would permit Bell to work additional unscheduled hours if necessary, Bell was ignored. Bell invited Defendant's managers to contact Bell or Weitzel for more information and clarification but they never did so. Defendant had no interest in trying to accommodate Bell or any employee in a Store Manager position with a

2

modified work schedule. Instead, after learning of Bell's disabilities and request for accommodation, Defendant concluded that Bell was not fit to be a Store Manager and offered him lower level positions with less pay than what was offered to non-disabled employees and applicants. When Bell failed to accept the demotions with discriminatory pay he was fired. Defendant argues that even if it had complied with its legal obligations and evaluated Bell's request and engaged in an interactive process that no accommodation could have permitted Bell to perform his job. Defendant's arguments are based unfounded opinions and disputed facts.

I.        Defendant Failed to Accommodate Bells' Disabilities.

A reasonable accommodation may include "job restructuring, part-time or modified work schedules," and other similar accommodations. *Id.* §12111(9)(B). To succeed on a failure to accommodate claim, Plaintiff "need not produce any evidence that the employer subjectively harbored discriminatory animus." *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir. 1999) (explaining that a failure to accommodate claim does not require a showing of discriminatory animus and that "any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability'").  Also see *Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 256-57 (1st Cir. 2000) (a failure to accommodate claim "does not require that an employer's action be motivated by a discriminatory animus directed at the disability").

Defendant does not dispute that Bell has a protected disability for purposes of this Motion and there is no dispute that Bell requested the accommodation that his scheduled hours be limited to nine hours per day and five days per week with the ability to work additional unscheduled hours on occasion if necessary. Therefore the issues in dispute on this claim are a) whether Bell was able to perform the essential functions of the job with or without reasonable accommodation and b) whether Defendant failed to offer a reasonable accommodation for the

disability.[2] Defendant's failure to engage in the interactive process in good faith also provides a stand alone basis for the denial of summary judgment on this claim.

A. <u>Defendant's failure to engage in the interactive process in good faith makes the rest of the reasonable accommodation analysis unnecessary at the summary judgment stage.</u>

EEOC regulations provide that an employee's request for an accommodation triggers a duty on the part of the employer to engage in an interactive process that "identif[ies] the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2. As part of this process, the employer is "expected to engage in a meaningful dialogue with the employee to find the best means of accommodating that disability." *See Tobin v. Liberty Mut. Ins. Co.,* 433 F.3d 100, 108 (1st Cir. 2005).

> [An] employer who acts in bad faith in the interactive process will be liable if the jury can reasonably conclude that the employee would have been able to perform the job with accommodations. In making that determination, the jury is entitled to bear in mind that had the employer participated in good faith, there may have been other, unmentioned possible accommodations.

*Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1116 (9th Cir. 2000), *vacated sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002).

In *Barnett*, the Ninth Circuit held that if a reasonable jury could find that an employer failed to engage in the interactive process in good faith then summary judgment on the failure to accommodate claim should be denied and the case should be decided at trial.  *Barnett*, 228 F.3d at 1116-1117.  The U.S. Supreme Court subsequently reviewed, vacated, and remanded the case.

---

[2] "Under the ADA, the term "discriminate" embodies "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8)." *Criado v. I.B.M,* 145 F.3d 437, 443 (1st Cir. 1998)

In his concurring opinion, Justice Stevens approved of the Ninth Circuit's holding on the interactive process, writing:

> The Court of Appeals also correctly held that there was a triable issue of fact precluding the entry of summary judgment with respect to whether petitioner violated the statute by failing to engage in an interactive process concerning respondent's three proposed accommodations. 228 F.3d 1105, 1117 (C.A.9 2000) (en banc). This latter holding is untouched by the Court's opinion today.

*U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 407 (2002). Also see *Fjellestad v. Pizza Hut of Am., Inc.,* 188 F.3d 944, 953 (8th Cir. 1999) ("We find that summary judgment is typically precluded when there is a genuine dispute as to whether the employer acted in good faith and engaged in the interactive process of seeking reasonable accommodations."); *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 318 (3rd Cir. 1999) ("When an employee has evidence that the employer did not act in good faith in the interactive process, however, we will not readily decide on summary judgment that accommodation was not possible and the employer's bad faith could have no effect"); *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 633–34 (7th Cir.1998).

As set out in the Plaintiff's Statement of Facts and above, Bell requested the accommodation in question multiple times, verbally and in writing, and Defendant ignored his request, failed to ever evaluate the request, failed to take any steps to collect facts about whether the request was reasonable, and failed to contact Bell or Weitzel for clarification or further information. Rather than consider Bell's request for reasonable accommodation in his own job, Defendant skipped to offering demotions to positions with half the pay. As a matter of law, demotion to another position is not a reasonable accommodation unless there are no effective accommodations that would enable the employee to perform the essential functions of their own position. *Warren v. United Parcel Service, Inc*., 518 F.3d 93, 100 (1st Cir. 2008); *Williams v. HealthReach Network,* F.Supp.2d, 2000 WL 760742 at Fn. 12 (D.Me. 2000), citing to EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans

with Disabilities Act (dated March 1, 1999). Therefore, the jury could and likely would conclude that Defendant's failure to respond to or consider Bell's actual request for accommodation in his Store Manager position constituted a failure to engage in the interactive process in good faith. In this context, a jury would need to conclude that even if Defendant had engaged in the process in good faith that there is no way that the parties would have arrived at a reasonable accommodation. This sort of intensive factual analysis should only be conducted and resolved at trial. *Garcia-Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 648 Fn. 12 (1st Cir. 2000)(citing an employer's failure to engage in the interactive process as a factor in reversing district court's grant of summary judgment). At a minimum, a jury could conclude that Bell and his medical provider were willing to be flexible and find a solution with Defendant including the potential to adjust the restrictions further if necessary. Weitzel testified that she was not a "rigid person" in terms of saying "this is the maximum and nothing else in between." Bell made it clear that he wanted to fully meet his job responsibilities and was willing to be flexible with regard to his restrictions. In this context even if a jury concluded that for some reason that the restriction requested by Bell in his July 13, 2015 email was not reasonable they could conclude that some mutually agreeable restriction could have been worked out if the Defendant had engaged in the process.

B. Defendant could have provided Bell with a reasonable accommodation that would have permitted him to perform the essential functions of the Store Manager job.

Plaintiff's burden on the issue of the "reasonableness/undue hardship" of a potential accommodation is limited to showing "that the proposed accommodation is reasonable-that it would enable [him] to perform the essential functions of her job, and that at least on the face of things, it is feasible for the employer under the circumstances." *Freadman v. Metropolitan Property and Cas. Ins. Co.*, 484 F.3d 91, 103 (1st Cir. 2007) citing to *Reed v. LePage Bakeries,*

*Inc.*, 244 F.3d 254, 259 (1st Cir. 2001); *Barnett*, 535 U.S. at 401-02. Then, it becomes the Defendant's burden to "demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A); *see also Freadman*, 484 F.3d at 103; *Reed*, 244 F.3d at 258-59.

1. Bell's requested accommodation would have permitted him to perform the essential functions of his position.

Defendant argues that Bell's proposed restriction on scheduled hours would preclude him from performing essential functions of his position. Defendant's argument is premised on a mischaracterization of the essential functions of the Store Manager position and is also premised on a mischaracterization of the accommodation requested by Bell. The record does not support either of the factual predicates of this claim and a reasonable jury could and likely would conclude that Bell could have performed the essential functions of his position with his requested accommodation.

a. The essential functions of the Store Manager job do not include being scheduled for a particular number of hours.

In this case, the Defendant argues that "Brian Bell's presence at the Belfast store for substantially more than nine hours per day, five days per week-or at the very least, some assurance that he would be available to remain at or come to the store when the need arose-was an absolute essential function of the job." (ECF No. 37 at 10). Defendant fails to support this claim with any evidence from the record except the opinions of Watters and Thomas speculating on how limiting the total hours of a Store Manager to forty-five in a week could hypothetically impact their performance. As discussed above and below, Watters, Thomas, and Defendant all admit that they have never considered what impact Bell's actual requested accommodation would have had on his ability to perform the Store Manager position and so the record is empty of any evidence supporting its position. To the contrary, the facts in the record reflect that

7

working and being available a particular number of scheduled or unscheduled hours were not essential functions of the job. The EEOC Regulations set out types of evidence this is relevant to whether a particular function is essential:

(i)   The employer's judgment as to which functions are essential;
(ii)  Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;
(iv)  The consequences of not requiring the incumbent to perform the function;
(v)   The terms of a collective bargaining agreement;
(vi)  The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)

(i)      The employer's judgment as to which functions are essential.

In this case Plaintiff served Defendant with a Rule 30(b)(6) notice which included the issue, "The essential functions of the Store Manager position." Defendant designated Nick Thomas as its representative on this issue. Thomas authenticated Defendant's Job Description for the Store Manager position for the period that Bell was employed by Defendant, reviewed the documents, admitted that the relevant Job Description is accurate, that the section of the Job Description setting out the essential functions of the position are accurate, and that the list of essential functions in the Job Description are not missing any essential job functions. The list of essential functions contained in Defendant's Job Description makes no mention, whatsoever, of the number or nature or extent of the hours that a Store Manager should work or anything, whatsoever, about availability.  As Defendant's representative, Thomas' admission that the essential functions listed on the Job Description are complete and his admission that the number of hours worked or availability are not essential functions of the job is binding on the Defendant and establishes this issue. At the very least, a reasonable jury could accept Defendant's admission on this subject and therefore this evidence and this admission, in itself, means that

there is a material dispute of fact with regard to Defendant's claim that working and being available for more than forty-five hours in a week are essential functions of the position.[3]

    (ii)    <u>Written job descriptions prepared before advertising or interviewing applicants for the job;</u>

As noted above, the Job Description contains a section setting out the Essential Functions of the Store Manager position and makes no mention or reference whatsoever of the number or nature or extent of the hours that a Store Manager should work or anything, whatsoever, about availability.

    (iii)    <u>The amount of time spent on the job performing the function;</u>

This issue does not make sense for Defendant's claim that Bell had to be scheduled for more than forty-five hours per week since Defendant is not claiming that Bell needed to be performing any particular task during the hours in question, just that they wanted him present at the Store more than what he was proposing to provide coverage just like any other staff member.

    (iv)    <u>The consequences of not requiring the incumbent to perform the function;</u>

During the ten months that Bell worked as the Store Manager, his average schedule was around forty six hours per week and was usually five days per week or less.[4]  He only rarely needed to work additional unscheduled hours. With this schedule, Bell and the Store performed well. His restriction would have permitted him to continue working unscheduled hours contrary to the claims in Defendant's Motion. With the restriction as proposed, Bell would have been scheduled approximately one hour less per week. Thomas and Watters admitted that the only

---

[3]In addition, Defendant's admission that working a particular number of hours or having specific availability is not an essential function precludes it from meeting its burden "to come forward with some evidence" that a particular function is essential." *Tobin v. Liberty Mut. Ins. Co*., 433 F.3d 100, 107 (1st. Cir. 2005).

[4] Defendant's own witnesses conceded that the schedule they were proposing would involve Bell working six days one week and five days the next week and so only working six days 50% of the time. Therefore, the only consequence of allowing Bell to work the requested schedule versus the schedule he had been working would have been that another employee would have occasionally (approximately once every four weeks) been required to work an additional shift and potentially work an additional hour per week.

justification for wanting a Store Manager to work more than forty five hours in a week and the only justification for wanting a Store Manager to cover empty shifts is to avoid the cost of paying an hourly employee to do so. Defendant admittedly never evaluated what the monetary cost would be and its designated representative, Beck, conceded that it probably would not have resulted in any additional monetary cost at all. So, the impact of allowing Bell to limit his scheduled hours to nine hour days and five days per week would have been minimal or non-existent.

(v)      The terms of a collective bargaining agreement;

Not applicable.

(vi)     The work experience of past incumbents in the job;

As noted above, Bell had been in the Store Manager job for ten months and was performing the job well while working an average schedule of forty-six hours per week and being scheduled for five days per week or less 76% of the time. The schedule requested by Bell would have been very similar to the one he was already working. At no point during Bell's tenure in the position was he informed that working a particular number of hours was an essential function of the job. Therefore, the Defendant's argument that Bell could not perform the essential functions of the job with the requested accommodation is contradicted by Bell's ten months of satisfactory performance.

Furthermore, following Bell's exclusion from the Belfast store, the Store was able to operate effectively and schedule employees to cover all shifts without a Store Manager. Between Assistant Managers and the District Manager, the Defendant was able to staff and manage the store. This evidence supports a finding that having a Store Manager work a particular schedule or be available for a particular number of hours was not essential.

(vii)    The current work experience of incumbents in similar jobs.

There is no evidence in the record on this issue.

All of the evidence in the record relating to essential functions, including Defendant's own admissions, undercuts Defendant's claim and this issue should go to the jury. In the absence of supportive facts, Defendant speculates that permitting Bell to limit his scheduled hours to forty-five in a week would likely preclude him from performing the actual essential functions of his job in a satisfactory manner and that he would therefore be unable to perform the essential functions well enough. This claim is also contradicted by the facts. The only support cited by Defendant are, again, the opinions of Watters and Thomas that if Bell's total hours were limited to forty-five per week (not the restriction requested by Bell), this would preclude him from doing things like scheduling, training, supervising, evaluating and maximizing store sales in a satisfactory manner.[5] These opinions did not evaluate Bell's actual requested restriction, are not backed up by any evidence, and are again contradicted by the evidence in the record which reflects that Bell performed his job duties for ten months in a satisfactory manner with an average weekly schedule of forty six hours and only being scheduled for five or fewer shifts in the vast majority of the weeks he worked for Defendant with unscheduled time typically limited to 15-30 additional minutes of work per week. A reasonable jury could and likely would conclude that being scheduled for one fewer hour per week would not lead to the collapse of Bell's satisfactory performance of his job duties. In addition, since Defendant ignored Bell's request and never gave him a chance to try performing his job with the accommodation, it should not be permitted to benefit from any uncertainty and ambiguity created by its own failure to engage in the interactive process.

---

[5]This argument by Defendant fails the First Circuit's admonition that "asserted requirements are solidly anchored in the realities of the workplace, not constructed out of whole cloth." *Gillen v. Fallon Ambulance Serv., Inc.,* 283 F.3d 11, 25 (1st Cir. 2002).

    b.  <u>Bell requested that his scheduled days per week be limited to five and that scheduled hours per day be limited to nine for a total of forty-five scheduled hours per week.</u>

Defendant's Motion is also premised on the false claim that Bell demanded that he be given only "predictable" hours and avoid "long hours and short notice." Bell's request was literally spelled out for Defendant and was clear that he could work unscheduled hours if necessary. Defendant's mischaracterization of Bell's request mirrors the false claim made by the Defendant's managers throughout the case that Bell was asking that his total hours be limited to forty five per week. Therefore, even if a jury concluded that being available and able to work outside of scheduled hours was an essential function of the job, Bell's requested restriction did not prevent him from doing so. On its face, the only modification that Bell sought was the limit on scheduled hours. As set out above, a jury could and likely would conclude from the evidence that being scheduled above and beyond the hours requested by Bell was not an essential function of the job.

Defendant also argues that Bell's claims should be dismissed because he failed to provide Defendant with enough "assurance" that he could have stepped in on short notice, that his requested accommodation was "amorphous" and "open-ended", that he only wanted to "work when able," and that this would have left Defendant "without a reliably present Manager." Defendant's claims are contradicted by the plain language in Bell's email:

> "When we met I explained that according to Ms. Weitzel, if necessary for me to work some hours beyond the scheduled forty five hours on occasion that would be ok so long as my scheduled hours are limited to 45 hours per week."

Bell's request permitted him to work additional unscheduled hours "if necessary" without caveats or reservations. The record does not support Defendant's claim that Bell requested an

"amorphous" or "open-ended" schedule.[6] Further, the evidence in the record is clear that if a situation had arisen at work that required Bell to step in and work unscheduled hours he would have done so.[7]

Defendant also argues that Bell's need for a few days of medical leave following the period in May and June 2015 - when he was required to work open to close, day after day, for weeks - is proof that he would have likely become unable to work again in the future rendering him unqualified for his position. To the contrary, the record reflects that during this time frame Bell requested permission to schedule some overtime for others so he could limit his own scheduled hours a bit and Watters refused. The record reflects that it was Watters' unreasonable denial of overtime (and Watters' verbal attacks on Bell at the time) that led Bell and Weitzel to conclude that a restriction on Bell's scheduled hours but permitting him to work additional

---

[6]Defendant mischaracterizes Bell's request in an attempt to liken his request to cases cited by Defendant where employees asked employers to accommodate serious attendance issues by permitting them to work or not work as able. *Kennedy v. Applause, Inc.*,1994 WL 740765, at *7 (C.D. Cal. Dec. 6, 1994), aff'd, 90 F.3d 1477 (9th Cir. 1996) (holding that "the ADA's 'job restructuring' or 'part-time or modified work schedules'" requirement "implies some type of schedule or regularity" and that an employee's request that she be able to decide when to work and not work was not reasonable); *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 878 (9th Cir. 1989) (finding in case predating the FMLA and ADA that the employer provided sufficient evidence in the record to support its argument that it needed to schedule employees in advance and  therefore the employee's proposed accommodation to determine his own schedule through the use of intermittent leave and working outside of scheduled shifts was an undue hardship); *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994) (holding that it is not a reasonable accommodation for an employer to permit an employee with attendance issues to continue to intermittently miss work where his position as a housekeeping aide required someone to be present to fill the shift); *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994) (holding it was not reasonable for employer to accommodate an employee's frequent absences where she had missed 521 hours of work in the prior year and the record reflected that U.S. Attorney's office depended on her to be present to input information into a database by a 4PM deadline each day). Even if the Court concludes that Bell's requested accommodation amounted to a request for flexible scheduling or may require some flexibility on occasion, this issue should go to the jury since the record does not contain evidence reflecting that regular attendance was an essential function of Bell's job. *Ward v. Massachusetts Health Research Inst., Inc.,* 209 F.3d 29, 36 (1st Cir. 2000). Bell was not asking for anything like what was requested in the cited cases. Rather, Bell was asking for a slightly modified schedule but with the ability to work additional hours if necessary. Defendant's assertion that it "could not count on" Bell is unfounded in light of the plain language of his requested accommodation and the evidence in the record that Bell would have and could have worked the hours necessary to perform his job and perform it well.

[7]Defendant's suggestion that the Court dismiss the claims because it has not received adequate "assurance" that Bell could have performed his job makes no sense where Bell spelled out his requested accommodation to Defendant and invited Defendant's managers to contact him or Weitzel to for further discussion and clarification and Defendant admittedly never contacted Bell, or Weitzel, or took any other steps to evaluate his request. Had Defendant complied with its obligations under the law to engage in the interactive process it could have obtained whatever additional information and clarification from Bell and Weitzel that it now attempts to use to defend against his claims.

unscheduled hours as necessary would address and prevent future situations like the one created by Watters' denial of overtime in May-June 2015. Bell and Weitzel were very intentional about crafting an initial request for accommodation that allowed Bell to continue to perform his job and perform it well. Defendant's admission that it now perceives Bell as a less reliable employee because he required leave in 2015 sounds in disability discrimination rather than a fact based defense for Defendant's failure to accommodate. Furthermore, even if a jury did conclude that Bell may not be able to cover every situation requiring that he work outside of his scheduled hours, they could conclude from the evidence that other employees including Assistant Managers and District Managers were also able to step in and cover the store in these circumstances and that having them do so would have been reasonable. For these reasons, all of the cases cited by Defendant for the proposition that "open-ended", "amorphous", "work-when-able" schedules may not be reasonable are inapposite.

2. Bell's requested accommodation was feasible for Defendant.

The request of a slightly modified schedule is reasonable on its face. In fact, the accommodation that Bell requested is explicitly recognized in both statutes. "The ADA explicitly states that 'job restructuring' and 'part-time or modified work schedules' are potential reasonable accommodations. 42 U.S.C. § 12111(9); *Ward v. Massachusetts Health Research Inst., Inc.,* 209 F.3d 29, 36 (1st Cir. 2000); 5 M.R.S. § 4553(9-A)(B). There is substantial evidence from which a jury could conclude that the requested accommodation is reasonable. During his ten months as Store Manager, Bell received satisfactory reviews and his job was not in jeopardy in any way. He grew sales and his Store was profitable in some months, a first. During this time his scheduled hours averaged forty-six per week.[8] Of the 38 weeks that he worked as the Store Manager, Bell

---

[8]The scheduled hours did not deduct the two fifteen minute breaks that Bell and the other employees at the Store received during the course of a full shift and so the actual scheduled hours were typically closer to 43-44 hours per week.

was only scheduled for six days in a week nine times. In the remaining 29 weeks he was scheduled five or fewer days in the week. Therefore his request, boiled down, was to work on average one less hour per week than he had been working and to be scheduled no more than five days per week which was what was already happening 76% of the time while he was employed as the Store Manager. Defendant could have easily provided Bell with his requested accommodation by permitting Bell to continue to schedule himself similarly to how he already scheduled himself and, at most, permit him to end his scheduled hours at 430PM. To the extent necessary, the very minimal hours not covered by Bell could have been covered by another employee. As set out above, Defendant never considered the cost of having other employees make up any difference in Bell's scheduled hours by scheduling an hourly employee and Defendant concedes that cost was not a factor in Defendant's failure to provide the accommodation.  Also as set out above, Bell's accommodation provided him with the ability to work additional unscheduled hours when necessary to meet the needs of the Store.  A reasonable jury could and very likely would find that providing Bell with this accommodation was feasible.

Furthermore, even if a reasonable jury concluded that the initial accommodation proposed by Bell was not feasible, it could and likely would conclude that the parties could have and would have worked out an accommodation that was feasible for Defendant and met Bell's needs if Defendant had engaged in an interactive process, evaluated the actual accommodation requested by Bell and communicated with him and Weitzel regarding any necessary modifications. Therefore, Defendant's failure to consider the accommodation or communicate with Bell or Weitzel about the accommodation is another reason to deny Defendant's Motion for Summary Judgment on this claim.

In the absence of evidence in the present case to support that accommodating Bell would have been unreasonable, Defendant spends much of its Motion citing to other cases with very different facts.

- *Tardie v. Rehab.Hosp. of Rhode Island*, 168 F.3d 538 (1st Cir. 1999). Defendant alleges that the First Circuit held in this case that "no one could satisfactorily perform all of the duties of [the employee's position] within the 40 hours the plaintiff was physically capable of working each week. Accordingly, her employer had no obligation under the ADA to retain her in that position." This is not correct. In *Tardie*, the First Circuit upheld a summary judgment on the ADA and Rehab Act claims because it concluded that plaintiff could not show she had a protected disability. That was the only basis for the holding and the only analysis in the case.[9] The Court did go on to evaluate essential functions under the FMLA and noted that where the job description explicitly referenced the ability to work long hours and where the plaintiff admitted that working outside of the 9-5 timeframe, being present for part of all three hospital shifts, working evenings, and working anywhere from 50-70 hours per week were "part of the job" and where the employee offered no evidence that the job could be performed within 40 hours, the district court did not err in finding that working more than 40 hours was an essential function.

- *E.E.O.C. v. AT & T Mobility Services, LLC*, 2011 WL 6309449 (E.D. Mich. 2011) involved an employee requesting a hard cap of 40 hours per week as an accommodation for a store manager job. The record reflected that she had previously required 55-60 hours per week to perform her job and other store managers also required this amount of time to perform the duties of the job. Her employer considered her restriction and the essential functions of the job, engaged in an interactive process, and concluded that it could not accommodate the plaintiff. There was substantial evidence in the record that reflected an incumbent needed to work 55-60 hours per week to perform the job and that her restriction of forty hours per week conflicted with the evidence of what the job required. The case is distinguishable from the present case where there was no interactive process or consideration of Bell's accommodation, where the evidence, including Defendant's admission, reflects that working more than 45 hours per week is not an essential function and where Bell's restrictions explicitly permitted him to work unscheduled hours beyond 45 hours per week as necessary.

- *Gober v. Frankel Family Trust*, 537 F.App'x 518 (5th Cir. 2013). Substantial evidence in the record including job description, testimony from employees in the department, and other evidence from the employer reflected that one of the central and most critical duties of a maintenance foreman was to be on call to address after-hours emergencies. The employee indicated to his employer that he required a scheduled restriction and could not be on call. Therefore, in the *Gober* case the undisputed evidence reflected that being on call was an

---

[9] Furthermore, even if the First Circuit had analyzed the case as Defendant claims the facts reflect that the job description for the position of HR manager included as an essential function, "ABILITY TO MAINTAIN ASSIGNED WORK HOURS: Has sufficient endurance to perform tasks over long periods of time" and the employee had a permanent cap of 40 hours per week distinguishing that case from the present one where there is no evidence reflecting that working particular hours is an essential function of the job and where Bell's restrictions permitted him to work more than his scheduled 45 hours per week as necessary.

essential function of the position and that the employee was specifically prohibited from being on call.

- *Bogner v. Wackenhut Corp.* 2008 WL 84590 (W.D.N.Y. 2008). The plaintiff was an armed security guard tasked with providing 24 hour coverage. The record reflected that all of the guards were required to be available for scheduled and on-call work 24 hours per day, that the guards were contracted to provide 24 hour coverage, and that each of the guards needed to be available to provide 24 hour coverage because a failure by the employer to do so could violate minimum staffing levels. Therefore, the employee's requested accommodation of allowing him to work only between the hours of 1030AM and 630PM precluded him from performing the essential function of working rotating shifts and providing emergency coverage.

In each of the cited cases, the employee provided a clear cut limit to the hours they could work and there was substantial and undisputed evidence in the record that working hours outside of the strict limit provided by the employee was essential to their position. The cases are therefore distinguishable from the present case. In an effort to recast the present case as similar to the cited cases, Defendant writes that in order to provide Bell with an accommodation, Defendant would have needed to "re-train other employees, and re-define their jobs." (ECF 37 at 11.) This is not an accurate picture of Bell's request which was to work, on average, one hour less per week likely by having another employee work a few more hours per week doing their own job. Where Bell made a clear request for accommodation and Defendant never evaluated or responded to the request, the Defendant cannot make out its burden on the issue of the reasonableness. *Garcia-Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 648–49 (1st Cir. 2000); *see Ward v. Massachusetts Health Research Institute, Inc.,* 209 F.3d 29 (1st Cir. 2000) (reversing summary judgment in an ADA case where the employer had produced no evidence of undue hardship).

Since a reasonable jury could find that it was feasible for Defendant to accommodate Bell's disability without permitting him to avoid essential functions of the Store Manager position Plaintiff's failure to accommodate claims should go to the jury.

II.     <u>Defendant Treated Bell Differently and Worse Because of Disability</u>.[10]

Where an employer excludes an employee from their position and terminates them rather than accommodate a known disability the employer may be liable for intentional discrimination. Defendant concedes that it excluded Bell from his Store Manager position after June 8, 2015 because he had requested accommodation for his disability. After Bell declined to accept demotions to positions paying half of his previous salary he was terminated. But for Bell's disclosure of his disabilities, his symptoms, and his need for accommodation he would not have been excluded from his position or terminated. Therefore, a mixed motive analysis is appropriate.[11] The First Circuit addressed this scenario in *Criado v. IBM Corp.* where an employer terminated an employee for absences while she sought medical leave as an accommodation. The employer asserted that it terminated the employee because of her absenteeism and that this was a legitimate non-discriminatory reason. The First Circuit rejected this rationale and held that "asserting that the termination was based on Criado's absenteeism rather than her disability does not justify IBM's action where the absence was the requested accommodation." *Criado v. IBM Corp.,* 145 F.3d 437, 444 (1st Cir. 1998).  In a Recommended

---

[10]Defendant's Motion only seeks judgment with respect to Plaintiff's claim of intentional discrimination in hiring and therefore Plaintiff's claims of discrimination in exclusion from his position and termination should go to the jury. *Gosselin v. Boralex Livermore Falls, LP. et. al,* 08-162-P-H (D.Me. 2009)(ECF No. 61 at 22-23); *Fuller-McMahan v, City of Rockland*, 2005 WL 1645765 (D. Me. July 12, 2005), at *9 (claims not mentioned in motion to dismiss survive). *Austin v. Town of Brookline*, 2001 WL 1117103, *3 (D.N.H. 2001) (court treated motion for summary judgment that did not address all claims as a motion for partial summary judgment); *Davila Aleman v. Feliciano Melecio*, 992 F. Supp. 91, fn 8 (D.P.R. 1997) (court refused to grant summary judgment on claim based on argument defendant did not raise). *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir.1992) and *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (holding that where a party introduces new evidence in its reply brief, the district court should not consider the new evidence without giving the non-movant an opportunity to respond).

[11] A mixed motive analysis applies in cases involving "direct evidence" of unlawful discrimination. *Doyle v. Dep't of Human Servs.*, 824 A.2d 48, 54, n.6 (Me. 2006). "Direct evidence" consists of "explicit statements by [Respondents] that unambiguously demonstrate [Respondents'] unlawful discrimination ... ." *Id.* Where this evidence exists, a plaintiff "need prove only that the discriminatory action was a motivating factor in an adverse employment decision." *Patten v. Wal-Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir. 2002); *Doyle*, 824 A.2d at 54, n.6. Upon such a showing, in order to avoid liability, the defendant must prove "that it would have taken the same action in the absence of the impermissible motivating factor." *Id.*; *Texas v. Crest Asset Mgmt., Inc.,* 85 F. Supp. 2d 722, 730 (S.D. Tex. 2000). Cf *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276-77, 109 S. Ct. 1775, 1804 (1989) (O'Connor, J., concurring).

Decision subsequently adopted by the Court, the District of Maine also considered this issue and denied summary judgment on plaintiff's intentional disability discrimination claim. *LaFlamme v. Rumford Hosp.,* No. 2:13-CV-460-JDL, 2015 WL 4139478, at \*17 (D. Me. July 9, 2015). Where the employer terminated an employee for "absenteeism" and the employee was seeking medical leave for the absences, the Court concluded, "there is also a triable issue as to whether her employment termination for absenteeism was based on her disability." *Id.* Therefore, if the Court concludes that there is sufficient evidence for a jury to conclude that Defendant could have reasonably accommodated Bell (rather than involuntarily excluding him from his position for months and then terminating his employment) then the intentional discrimination case for the exclusion from the position and the termination should go to the jury. A jury could also conclude from the evidence of probative timing, bad faith, and pretext set out in the Plaintiff's Statement of Facts and above that Bell's disability was a factor that made a difference in these actions.

There is also sufficient evidence in the record for the jury to find that Defendant discriminated against Bell because of his disability with respect to the offer of the Assistant Manager position in Belfast. A jury could conclude from the record that non-disabled applicants and employees were paid or offered between $11 and $13.50 per hour for Assistant Manager positions, that a new hire with no experience with the Company was paid $12 per hour to work as the Assistant Manager in Belfast, and that Watters is dissembling the facts when he claims he offered Bell $11 per hour. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Zapata-Matos v. Reckitt & Coleman, Inc.,* 277 F.3d 40, 45 (1st Cir.2002) ("disbelief of the reason may, along with the prima facie case, on appropriate facts, permit the trier of fact to conclude that the employer had discriminated.")This evidence of disparate treatment and pretext is sufficient for a jury to find discrimination. *Rathbun v. Autozone, Inc.,* 361 F.3d 62, 72 (1st Cir.2004) (holding that ways of showing pretext include but are not limited to "evidence of

19

differential treatment, evidence of discriminatory comments, statistical evidence, and comparative evidence"); *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 450 (1st Cir. 2009) (holding that a jury could find evidence of disparate treatment sufficient in itself to support a finding that the stated reason for termination is pretext and the true motivation was discriminatory.)

III.     Defendant Retaliated against Bell for requesting and needing his Accommodation.

Bell's job was not in jeopardy in any way until he made his request for accommodation. He was then excluded from his position, offered demotions, and then terminated. Defendant justifies these adverse arguments by citing to its "good faith" process for evaluating and rejecting Bell's request for accommodation and claims that every reasonable jury would find that it acted in good faith. The record undercuts Defendant's arguments.  Its witnesses and the documents prove that despite Bell's repeated clarification that his restriction would permit him to work unscheduled hours as needed, his managers ignored this information, and denied the request based on rationales that they knew to be disingenuous. The record reflects that Defendant's managers did not deal with Bell in good faith and that rather from the time that he requested his accommodation, Defendant dissembled the facts and took actions designed to keep him from returning to his Store Manager position and to discourage him from accepting other positions by treating him differently and worse than other employees. In light of the timing, pretext, and disparate treatment a jury could find that Bell's requests for accommodation were a factor in Defendant's exclusion of him from his own position and offers of lower pay for the demotions.[12]

For these reasons, Defendant's Motion for Summary Judgment should be denied.

---

[12] Retaliation claims do not require a showing that an employee is a qualified individual with a disability.  *Nicholson v. Bangor Historic Trac, Inc.* 2013 WL 685337 *6 (D.Me. 2013) citing (*Kelley v. Correctional Medical Services, Inc.,* 707 F.3d 108 (1st Cir. 2013).

Respectfully Submitted,

Date: November 3, 2017                    /s/ Chad T. Hansen
                                          Chad T. Hansen

                                          Maine Employee Rights Group
                                          92 Exchange Street, 2nd Floor
                                          Portland, Maine 04101
                                          (207) 874-0905
                                          chansen@maineemployeerights.com

<u>CERTIFICATE OF SERVICE</u>

    I certify that I served the foregoing document upon all counsel of record through this Court's electronic filing system on the date below.

Date:   November 3, 2017                  /s/ Chad T. Hansen