*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| BRIAN BELL, )<br>)<br>    Plaintiff, )<br>) <br>v. )<br>)<br>O'REILLY AUTO ENTERPRISES, LLC, )<br>d/b/a O'REILLY AUTO PARTS, )<br>)<br>    Defendant. ) | 1:16-cv-00501-JDL |

### DEFENDANT'S FINAL PRETRIAL MEMORANDUM

Defendant O'Reilly Auto Enterprises, LLC, d/b/a O'Reilly Auto Parts (hereinafter "O'Reilly"), through its undersigned counsel, submits the following Final Pretrial Memorandum pursuant to Local R.Civ.P. 16.4(b).

**A.  FACTUAL STATEMENT OF DEFENSE.**

    **1.  No Disability**

O'Reilly contends that the evidence at trial will be insufficient to establish that the Plaintiff was disabled, because it will not establish that his depression, tic disorder, or attention deficit disorder substantially limited any major life activity.

Charles Robinson, Ph.D., a psychologist designated by the Plaintiff to testify as an expert at trial, has testified that at the time Brian Bell was placed on temporary medical leave and requested a scheduling accommodation going forward, he suffered from only moderate depression.  Although Dr. Robinson says Mr. Bell eventually suffered a "major depressive order," that came later, only after – and allegedly as a result of – the denial of his request for an accommodation.

Dr. Robinson also acknowledged in his deposition that he has not made and would not purport to make a diagnosis of Attention Deficit Disorder. Rather, he would defer to others; however, there is no other expert designated to testify who will support that diagnosis.

Finally, there is no evidence that Mr. Bell's tic disorder was or is disabling. No one has testified or will testify that it interfered with his ability to function at work, or to interact with the public. His own wife testified that she only became aware of the disorder after she had known Mr. Bell for several years.

### 2. No Discrimination

Furthermore, assuming Mr. Bell was disabled, O'Reilly denies that it discriminated against him by failing to reasonably accommodate him; by deliberately treating him worse than other, non-disabled employees; or by retaliating against him.

O'Reilly contends, and the Court has agreed, that working long hours on short notice, and at unpredictable times, is an essential function of the position of Store Manager, which Mr. Bell occupied in O'Reilly's Belfast store. O'Reilly contends that the accommodation Mr. Bell requested – that his scheduled hours be limited (nine hours per day, five days per week), with the proviso that he might or might not be able to exceed them, depending on how he felt on any particular day – was not a reasonable one, because:

- No other Store Manager had or has a similarly-limited schedule;
- The decision whether or not Mr. Bell could exceed his scheduled hours would be made by Mr. Bell alone;
- Neither Mr. Bell nor O'Reilly would know, until he reached the limit of his scheduled hours and days, whether he would be able to exceed them;

- Therefore, O'Reilly would not be able to have confidence that the management needs of the Belfast store would be met.

O'Reilly also denies that it intentionally discriminated against Mr. Bell because of his disability. In its ruling on O'Reilly's Motion for Summary Judgment, the Court construed the Amended Complaint as asserting a disparate treatment claim, distinct from the failure-to accommodate claim, based on O'Reilly's decision not to keep Brian Bell working temporarily in a job he said he could not fully perform. It is O'Reilly's position that there is no evidence of discriminatory animus. Therefore, the only potentially viable claim in the case is the failure-to-accommodate claim, which requires no proof of discriminatory animus. *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir. 1999) (proof of intent to discriminate is unnecessary in failure-to-accommodate case, and "[i]t follows inexorably that the *McDonnell Douglas* scheme is inapposite in respect to such claims").

Finally, O'Reilly denies that it retaliated against Mr. Bell by offering him a lower rate of pay to work as Assistant Store Manager in the Belfast store. The hourly rate Mr. Bell was offered was higher than the rate O'Reilly paid Eric Hustus, who had been the Assistant Store Manager until he stepped into Bell's position as Store Manager. Further, when Mr. Hustus resumed the position of Assistant Store Manager, he did so at the hourly rate he had been paid before his promotion (which, again, was less than O'Reilly had offered Mr. Bell). Although O'Reilly did pay Jonathan Dow (who became interim ASM of the Belfast store when Bell departed and Hustus was promoted) a higher hourly rate than it paid Hustus and more than it offered Bell, that disparity did not reflect an intent to discriminate on the basis of disability. Rather, it was due to the fact that Dow

had been hired with the promise of a higher wage with the expectation that he would work at the Bangor store, where market conditions and store performance warranted it.

**B.     CONROVERTED POINTS OF LAW AND EVIDENTIARY QUESTIONS**

    **1.     Whether the "essential function" issue should be treated as conclusively established**

In its decision on O'Reilly's Motion for Summary Judgment, the Court determined that there was no genuine dispute as to the following fact: That the Plaintiff's ability to work long hours on short notice at unpredictable times was an essential function of his position as a Store Manager. The Court denied summary judgment, however, in part because it concluded that the Plaintiff might have been able to perform those essential functions with a reasonable accommodation.

Rule 56(g) provides that "[i]f the court does not grant all the relief requested by [a motion for summary judgment], it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the facts as established in the case." Fed. R. Civ. P. 56(g). Although Rule 56(g) is permissive, not mandatory, it allows the Court "to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues." *Republic Tobacco, L.P. v. North Atlantic Trading Co., Inc.,* 254 F.Supp.2d 985, 997 n. 13 (N.D.Ill.2002) (applying former Rule 56(d)). *See United States v. Kellogg Brown & Root, Inc.,* 2015 WL 10937548, at *1 (E.D. Tex. June 10, 2015) ("Rule 56(g) allows the court to weigh the cost of treating potential fact disputes as established against 'the cost of resolving those disputes by other means, including trial.'") (quoting Fed. R. Civ. P. 56(g) advisory committee's note); *D'Iorio v. Winebow, Inc.,* 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014) (applying current Rule 56(g)).

There is some efficiency to be gained, and nothing to be lost, by treating the "essential function" issue as conclusively established. The issue of whether a function is "essential" to a job is analytically distinct from, and antecedent to, the question of whether it is "reasonable" to provide an accommodation that will allow an employee to perform the function. *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 78 (1st Cir. 2010) ("'[A] court must evaluate the essential functions of the job without considering the effect of [any] special arrangements.'") (quoting *Phelps v. Optima Health, Inc.,* 251 F.3d 21, 25 (1st Cir. 2001)).

The question of whether availability was an essential function of the job was hotly contested in the summary judgment proceedings. O'Reilly's assertions concerning the essential functions of Brian Bell's job were spelled out in the first 36 paragraphs of its Statement of Undisputed Material Facts. The Plaintiff vigorously contested several of the assertions – particularly those set forth in Paragraphs 28, 29, 30, 31, 32, 34, 35 and 36 of the SUMF – upon which O'Reilly based its argument concerning the scope of Bell's essential functions. There is no need to spend more time and judicial resources re-litigating that issue in front of the jury. It would be simplest, most efficient, and entirely appropriate to treat the essential function question as conclusively established, and have the jury simply consider whether the accommodation the Plaintiff requested was "reasonable" under all the circumstances.

    **2.**    **Admissibility of expert opinions**

The Plaintiff's expert psychologist, Charles Robinson, PhD, will offer some opinions that are admissible, although they will be subject to challenge on cross-examination. There are some opinions, however, that O'Reilly will ask the Court to exclude altogether.

Dr. Robinson's evaluation consisted of meeting with Brian Bell on one day (April 4, 2017), and then arranging for him to take two psychological tests. Most of Dr. Robinson's

testimony focused on Mr. Bell's mental and emotional capacity to work long, unpredictable hours.  He testified that he deferred to Judy Weitzel's recommendation that Mr. Bell be limited to a schedule of no more than nine hours per day, five days per week.  He went on to say, however, that based on his one meeting with Mr. Bell (and things Mr. Bell told him during that meeting) he could "confidently predict" that whenever Mr. Bell felt well enough to work more than his scheduled hours, he would do so if asked.   According to Dr. Robinson, "that's how he's built."  *Robinson Depo. at 70:1-71:24*.  This is classic character evidence.  Dr. Robinson does not purport to be rendering an opinion rooted in objective clinical data; he is simply vouching for Mr. Bell's work ethic based on his subjective impressions of a man he met once.

O'Reilly will also object to Dr. Robinson offering the following opinions, for the reasons stated:

- Dr. Robinson should not be allowed to testify that the 9 hour/5 day schedule was appropriate or necessary.  He testified in his deposition that he never made any effort to gauge whether that restriction was appropriate, but rather deferred entirely to Judy Weitzel.  *Robinson Depo. at 61:10-23*.  Ms. Weitzel testified about her reasons for making that recommendation.  There is no need for Dr. Robinson to say "me too."

- Dr. Robinson should not be permitted to testify that Mr. Bell suffers from attention deficit disorder.  He testified in his deposition that he himself would not make that diagnosis in Mr. Bell's case; he would defer to others.  Moreover, he has never seen records reflecting that diagnosis in Mr. Bell's case.  *Robinson Depo. at 61:24-62:3 & 64:25-65:7.*  Furthermore, Dr. Robinson should not be permitted to testify that Mr. Bell's ability to function is compromised by ADD unless and until a sufficient foundation has been established to support a finding that he actually suffers from that condition.

- Dr. Robinson should not be permitted to testify that Mr. Bell experienced a period of disability because of reactions to the medications he was prescribed – or even that he suffered any adverse reactions to those medications. Dr. Robinson offered no such opinion in his Rule 26 report or in his deposition.

### 3. Bifurcation of liability and damages

O'Reilly requests that the Court exercise its authority under Rule 42(b) to order separate trials of liability and damages. Under Rule 42(b), the Court's discretion

> is guided by consideration of several factors: (1) whether a separation of the issues for trial will expedite disposition of the action; (2) whether such separation will conserve trial time and other judicial resources; (3) whether such separation will be likely to avoid prejudice to any party at trial that may occur in the absence of separation; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings

*Thorndike ex rel. Thorndike v. Daimlerchrysler Corp.,* 220 F.R.D. 6, 7–8 (D. Me. 2004).

Here, there is no overlap between the facts relevant to (1) the question of whether O'Reilly violated state and federal disability discrimination statutes, and (2) the Plaintiff's damages. Therefore, bifurcation would not require any party to present the same evidence twice. Conversely, if the jury finds in O'Reilly's favor on liability there will be no need to offer any evidence pertaining to damages.

On the other hand, there is a real and substantial risk that the evidence on the issue of compensatory damages might unfairly prejudice O'Reilly. Mr. Bell's medical records show that he became suicidal for a time after he lost his job. That evidence will naturally engender great sympathy. Bifurcation will allow the Court to ensure that sympathy does not unfairly affect the jury's liability analysis.

Furthermore, O'Reilly could also be unfairly prejudiced if evidence of its financial condition is presented to the jury at the liability phase of the case. O'Reilly's submits that financial information should not be considered at all, even on the issue of punitive damages, but recognizes that there is uncertainty on that point. *See Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110, 130 (D. Me. 2007) (noting that Judge Hornby's pattern punitive damages instruction does not permit the jury to consider the defendant's wealth, but declining to rule "on a motion *in limine* [that] evidence of [a defendant's] wealth [was] inadmissible as a matter of law"). Bifurcation of the liability and damages could make it unnecessary to decide whether evidence of wealth is admissible on the issue of punitive damages. And, if the Court decides that evidence of wealth is admissible, bifurcation will eliminate the risk that it might affect the liability analysis.

C. **PROPOSED STIPULATIONS**

Counsel for the parties have agreed to enter into a stipulation concerning the wages earned by the Plaintiff since his separation from O'Reilly.

D. **DEFENDANT'S WITNESSES**

1. Nick Thomas, O'Reilly Auto Parts, Devens, MA (formerly of Windham, ME)
2. Christopher Watters, 2187 Bennoch Road, Old Town, ME
3. Donald Beck, O'Reilly Auto Parts, 233 S. Patterson Avenue, Springfield, MO
4. Alison Rush, O'Reilly Auto Parts, 233 S. Patterson Avenue, Springfield, MO
5. Judy Weitzel (by deposition), 117 Dry Creek Trail, Ennis, MT (formerly of Maine)
6. Natalie Turner

E. **DEFENDANT'S EXHIBITS**

1. Employment Application (BPF 014-018)

2. Store Manager Job Description

3. On-Boarding Procedures (OBP 2012 001-010)

4. Harassment-Free Workplace policies (TS HNS 001-026 & TS HS 001-023)

5. On-Boarding Hiring Process (HP 001-029)

6. On-Boarding Hiring Process - Store Managers (HP 2015 001-050)

7. ADA Policy (ADA 001-015)

8. New Team Member Acknowledgment Form (BPF 021)

9. Performance Evaluations (BPF 001 - 004)

10. Progressive Discipline Form (BPF 036)

11. Fitness for Duty Form (6/4/15)

12. Weitzel letter (6/4/15)

13. Emails contained in Leave of Absence File (LOA 001-061)

14. Assistant Store Manager Job Description

Dated at Portland, Maine this 4th day of June, 2018.

/s/ Christopher C. Taintor

Christopher C. Taintor, Esq.
Robert W. Bower, Esq.
Attorneys for Defendant

NORMAN, HANSON & DeTROY
Two Canal Plaza, P.O. Box 4600
Portland, Maine  04112-4600
(207) 774-7000

*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

## Certificate of Service

I hereby certify that on June 4, 2018, I electronically filed Defendant's Final Pretrial Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Christopher C. Taintor, Esq.

Christopher C. Taintor, Esq.
Robert W. Bower, Esq.
Attorneys for Defendant

Norman, Hanson & DeTroy, LLC
Two Canal Plaza, P.O. Box 4600
Portland, ME  04112-4600
(207) 774-7000