## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BRIAN BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:16-cv-00501-JDL |
| v. | ) | |
| | ) | |
| O'REILLY AUTO ENTERPRISES, LLC, | ) | |
| d/b/a O'REILLY AUTO PARTS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S FINAL PRETRIAL MEMORANDUM

NOW COMES Defendant O'Reilly Auto Enterprises, LLC, d/b/a O'Reilly Auto Parts (hereinafter "O'Reilly"), by and through undersigned counsel, Norman, Hanson & DeTroy, LLC, and submits the following Final Pretrial Memorandum pursuant to Local R. Civ. P. 16.4(b).

**A.     Factual Statement of Defense**

1.     No Disability

O'Reilly submits that the evidence at trial will be insufficient to establish that the Plaintiff's depression, tic disorder, or attention deficit disorder substantially limited any major life activity.

The Plaintiff's expert, Charles Robinson, Ph.D., initially testified that at the time Brian Bell was placed on temporary medical leave and requested a scheduling accommodation going forward, he suffered from only moderate depression.  Although Dr. Robinson testified at the July 2018 trial that Plaintiff began to suffer major depressive disorder "at the very least, since 2014" (*July 2018 Trial Transcript ("TT") Vol. II* at 293:3-6), he later conceded that, in his May 2017 deposition, he had offered his opinion that Plaintiff suffered from major depressive disorder after June 4, 2015: the date on which he requested the accommodation that was ultimately denied (*TT Vol. II* at 310:5-11; *see Robinson Depo.* at 73:3-13).

In addition, Dr. Robinson acknowledged in his deposition that he has not made and would not purport to make a diagnosis of Attention Deficit Disorder.  Rather, he would defer to others; however, there is no other expert designated to testify who will support that diagnosis.

Finally, there is no evidence that Mr. Bell's tic disorder was or is disabling, as there is no testimony that it interfered with his ability to function at work, or to interact with the public.

2. <u>No Discrimination</u>

Furthermore, assuming Mr. Bell was disabled, O'Reilly denies that it discriminated against him by failing to reasonably accommodate him.  O'Reilly contends that working long hours on short notice, and at unpredictable times, is an essential function of the position Mr. Bell occupied in O'Reilly's Belfast store.  O'Reilly contends that the accommodation Mr. Bell requested—that his scheduled hours be limited (nine hours per day, five days per week), with the proviso that he might or might not be able to exceed them, depending on how he felt on any particular day—was not a reasonable one, because (1) no other Store Manager had or has a similarly-limited schedule; (2) the decision whether or not Mr. Bell could exceed his scheduled hours would be made by Mr. Bell alone; (3) neither Mr. Bell nor O'Reilly would know, until he reached the limit of his scheduled hours and days, whether he would be able to exceed them; and (4) O'Reilly therefore could not be confident that the management needs of his store would be met.

**B.** **<u>Controverted Points of Law and Evidentiary Questions</u>**

1. <u>Whether the "essential function" issue should be treated as conclusively established</u>

In its decision on O'Reilly's April 2018 Motion for Summary Judgment, this Court determined that there was no genuine dispute as to the following fact: that the Plaintiff's ability to work long hours on short notice at unpredictable times was an essential function of his position as a Store Manager.  The Court denied summary judgment, however, in part because it concluded

that the Plaintiff might have been able to perform those essential functions with a reasonable accommodation. The Defendant asks the Court to treat as conclusively established its prior determination that the Plaintiff's ability to work long hours on short notice at unpredictable times was an essential function of his position as a Store Manager.  *See* Fed. R. Civ. P 56(g) ("If the court does not grant all the relief requested by [a motion for summary judgment], it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the facts as established in the case.").

Such an order is appropriate because the issue of whether a function is "essential" to a job is analytically distinct from, and antecedent to, the question of whether it is "reasonable" to provide an accommodation that will allow an employee to perform the function. *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 78 (1st Cir. 2010) ("[A] court must evaluate the essential functions of the job without considering the effect of [any] special arrangements.") (quotation marks omitted)).

Furthermore, the question of whether availability was an essential function of the job was hotly contested in the summary judgment proceedings.  O'Reilly's assertions concerning the essential functions of Brian Bell's job were spelled out in the first 36 paragraphs of its Statement of Undisputed Material Facts.  The Plaintiff vigorously contested several of the assertions— particularly those set forth in Paragraphs 28, 29, 30, 31, 32, 34, 35 and 36 of the SUMF—upon which O'Reilly based its argument concerning the scope of Bell's essential functions. There is no need to spend more time and judicial resources re-litigating that issue in front of the jury.  It would be simplest, most efficient, and entirely appropriate to treat the essential function question as conclusively established, and have the jury simply consider whether the accommodation the Plaintiff requested was "reasonable" under all the circumstances.

2.      Admissibility of Expert Opinions

The Plaintiff's expert psychologist, Charles Robinson, PhD, will offer some opinions that are admissible, although they will be subject to challenge on cross-examination.  There are some opinions, however, that O'Reilly will ask the Court to exclude altogether.

Dr. Robinson's evaluation consisted of meeting with Brian Bell on one day (April 4, 2017), and then arranging for him to take two psychological tests.  Dr. Robinson testified, based on his one meeting with Mr. Bell (and things Mr. Bell told him during that meeting), that he could "confidently predict" that whenever Mr. Bell felt well enough to work more than his scheduled hours, he would do so if asked.   According to Dr. Robinson, "that's how I think this guy is built." (*Robinson Depo.* at 71:4-5.)  This is classic character evidence.  Dr. Robinson does not purport to be rendering an opinion rooted in objective clinical data: he is simply vouching for Mr. Bell's work ethic based on his subjective impressions of a man he met once.

O'Reilly will also object to Dr. Robinson offering the following opinions, for the reasons stated:

- Dr. Robinson should not be permitted to testify that Mr. Bell suffers from attention-deficit disorder.  He testified in his deposition that he himself would not make that diagnosis in Mr. Bell's case; he would defer to others.  Moreover, he has never seen records reflecting that diagnosis in Mr. Bell's case. (*Robinson Depo.* at 61:24-62:3, 64:25-65:7.)

- Dr. Robinson should not be permitted to testify that Mr. Bell experienced a period of disability because of reactions to the medications he was prescribed, or even that he suffered any adverse reactions to those medications.  Dr. Robinson offered no such opinion in his Rule 26 report or in his deposition.

3.      Bifurcation of liability and damages

O'Reilly requests that the Court exercise its authority under Fed. R. Civ. P. 42(b) to order separate trials of liability and damages.  Pursuant to Rule 42(b), the Court's discretion

> is guided by consideration of several factors: (1) whether a separation of the issues for trial will expedite disposition of the action; (2) whether such separation will conserve trial time and other judicial resources; (3) whether such separation will be likely to avoid prejudice to any party at trial that may occur in the absence of separation; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings.

*Thorndike ex rel. Thorndike v. Daimlerchrysler Corp.,* 220 F.R.D. 6, 7–8 (D. Me. 2004).

Here, there is no overlap between the facts relevant to (1) the question of whether O'Reilly violated state and federal disability discrimination statutes, and (2) the Plaintiff's damages. Therefore, bifurcation would not require any party to present the same evidence twice. Conversely, if the jury finds in O'Reilly's favor on liability, there will be no need to offer any evidence pertaining to damages.

On the other hand, there is a real and substantial risk that the evidence on the issue of compensatory damages might unfairly prejudice O'Reilly. Mr. Bell's medical records show that he became suicidal for a time after he lost his job. That evidence will naturally engender great sympathy. Bifurcation will allow the Court to ensure that sympathy does not unfairly affect the jury's liability analysis. The risk of unfairness is particularly acute because there is a live question as to whether, even if the jury finds that O'Reilly failed to reasonably accommodate Mr. Bell, it will find that the failure to accommodate satisfies the standard necessary for an award of compensatory or punitive damages. 42 U.S.C.A. § 1981a(a)(3); 5 M.R.S.A. §4613(2)(B)(8)(b).

Furthermore, O'Reilly could be unfairly prejudiced if evidence of its financial condition is presented to the jury at the liability phase of the case. O'Reilly's submits that financial information should not be considered at all, even on the issue of punitive damages, but recognizes that there is uncertainty on that point. *See Burnett v. Ocean Properties, Ltd.,* No. 2:16-CV-00359-JAW, 2018 WL 5270229, at *3 (D. Me. Oct. 23, 2018) (noting that Judge Hornby's pattern punitive damages

instruction does not permit the jury to consider the defendant's wealth, but declining to rule "on a motion *in limine* [that] evidence of [a defendant's] wealth [was] inadmissible as a matter of law"); *Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110, 130 (D. Me. 2007) (same).  Bifurcation of the liability and damages phases of the trial could make it unnecessary to decide whether evidence of wealth is admissible on the issue of punitive damages.  And, if the Court decides that evidence of wealth is admissible, bifurcation will eliminate the risk that it might affect the liability analysis. Accordingly, O'Reilly will ask the Court to enter an order of bifurcation.  *See Burnett v. Ocean Properties, Ltd.,* No. 2:16-CV-00359-JAW, 2018 WL 5270229, at *3 (D. Me. Oct. 23, 2018) ("The Court is inclined to bifurcate the questions of liability and compensatory damages and the question of punitive damages.").

**C.    Proposed Stipulations**

Counsel for the parties will likely enter into a stipulation concerning the wages earned by the Plaintiff since his separation from O'Reilly.

**D.    Defendant's Witnesses**

1. Nicholas Thomas, O'Reilly Auto Parts, 4024 Glenside Dr., Henrico, Virginia 23228 (formerly of Windham, ME)

2. Christopher Watters, 87 Seventh St., Bangor, ME

3. Donald Beck, current address unknown

4. Alison Rush, O'Reilly Auto Parts, 233 S. Patterson Avenue, Springfield, MO

5. Judy Weitzel (by deposition), 117 Dry Creek Trail, Ennis, MT (formerly of Maine)

6. Natalie Turner

**E.    Defendant's Exhibits**

1.    Employment Application (BPF 014-018)

2.      Store Manager Job Description

3.      On-Boarding Procedures (OBP 2012 001-010)

4.      Harassment-Free Workplace policies (TS HNS 001-026 & TS HS 001-023)

5.      On-Boarding Hiring Process (HP 001-029)

6.      On-Boarding Hiring Process - Store Managers (HP 2015 001-050)

7.      ADA Policy (ADA 001-015)

8.      New Team Member Acknowledgment Form (BPF 021)

9.      Performance Evaluations (BPF 001 - 004)

10.     Progressive Discipline Form (BPF 036)

11.     Fitness for Duty Form (6/4/15)

12.     Weitzel letter (6/4/15)

13.     Emails contained in Leave of Absence File (LOA 001-061)

14.     Assistant Store Manager Job Description

DATED at Portland, Maine this 24th day of February, 2021.

/s/ Christopher C. Taintor
Christopher C. Taintor, Esq.
Trevor D. Savage, Esq.
*Attorneys for Defendant*

NORMAN, HANSON & DeTROY
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
ctaintor@nhdlaw.com
tsavage@nhdlaw.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

### Certificate of Service

I hereby certify that on February 24, 2021, I electronically filed Defendant's Final Pretrial Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Christopher C. Taintor
Christopher C. Taintor, Esq.
*Attorney for Defendant*

NORMAN, HANSON & DeTROY
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
ctaintor@nhdlaw.com