**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| BRIAN BELL, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>O'REILLY AUTO ENTERPRISES, LLC, )<br>d/b/a O'REILLY AUTO PARTS, )<br>)<br>    Defendant. ) | 1:16-cv-00501-JDL |

**DEFENDANT'S FINAL PRETRIAL MEMORANDUM**

NOW COMES Defendant O'Reilly Auto Enterprises, LLC, d/b/a O'Reilly Auto Parts (hereinafter "O'Reilly"), by and through undersigned counsel, Norman, Hanson & DeTroy, LLC, and submits the following Final Pretrial Memorandum pursuant to Local R. Civ. P. 16.4(b).

**A.   Factual Statement of Defense**

    1.   No Disability

O'Reilly submits that the evidence at trial will be insufficient to establish that the Plaintiff's depression, tic disorder, or attention deficit disorder substantially limited any major life activity.

The Plaintiff's expert, Charles Robinson, Ph.D., initially testified that at the time Brian Bell was placed on temporary medical leave and requested a scheduling accommodation going forward, he suffered from only moderate depression. Although Dr. Robinson testified at the July 2018 trial that Plaintiff began to suffer major depressive disorder "at the very least, since 2014" (*July 2018 Trial Transcript ("TT") Vol. II* at 293:3-6), he later conceded that, in his May 2017 deposition, he had offered his opinion that Plaintiff suffered from major depressive disorder *after* June 4, 2015: the date on which he requested the accommodation that was ultimately denied (*TT Vol. II* at 310:5-

11; *see Robinson Depo.* at 73:3-13).  Thus, as of the date he requested an accommodation, Mr. Bell was not disabled by major depressive disorder.

Dr. Robinson also acknowledged in his deposition that he had not made and would not make a diagnosis of Attention Deficit Disorder (ADD); rather, he would defer to others. The Plaintiff has not designated any other expert to testify that in 2015, he was suffering the effects of ADD.  Likewise, there is no evidence that if he was actually suffering from ADD in 2015, that condition adversely affected his ability to function at work.  Therefore, O'Reilly will move at trial to exclude any evidence of the fact that Mr. Bell was diagnosed with ADD when he was a child.

There is no evidence that Mr. Bell's tic disorder was or is disabling, and there is no testimony that it interfered with his ability to function at work, or to interact with the public.

Finally, there is no expert testimony or other competent evidence to support a finding that Mr. Bell was disabled by the side effects of any medications he was taking.

2.  No Discrimination

Furthermore, assuming Mr. Bell was disabled, O'Reilly denies that it discriminated against him by failing to reasonably accommodate him.  O'Reilly contends that working long hours on short notice, and at unpredictable times, is an essential function of the position Mr. Bell occupied in O'Reilly's Belfast store.  O'Reilly contends that the accommodation Mr. Bell requested—that his scheduled hours be limited (nine hours per day, five days per week), with the proviso that he might or might not be able to exceed them, depending on how he felt on any particular day—was not a reasonable one, because (1) no other Store Manager had or has a similarly-limited schedule; (2) the decision whether or not Mr. Bell could exceed his scheduled hours would be made by Mr. Bell alone; (3) neither Mr. Bell nor O'Reilly would know, until he reached the limit of his

scheduled hours and days, whether he would be able to exceed them; and (4) O'Reilly therefore could not be confident that the management needs of his store would be met.

      3.   Undue Burden

O'Reilly will also argue that granting the accommodation the Plaintiff requested would have imposed an undue hardship to its business. O'Reilly contends that allowing Mr. Bell discretion to stop working whenever he felt he needed to, after he had worked nine hours in a day, would have created significant difficulty or expense, considering the nature and cost of the accommodation, the effect of the accommodation on expenses and resources, and the impact of the accommodation on the company's operations, including the impact on the ability of other employees to perform their duties and on the company's ability to operate.

**B.**   **Controverted Points of Law and Evidentiary Questions**

      1.   Whether the "essential function" issue should be treated as conclusively established

In its decision on O'Reilly's April 2018 Motion for Summary Judgment, this Court determined that there was no genuine dispute as to the following fact: that the Plaintiff's ability to work long hours on short notice at unpredictable times was an essential function of his position as a Store Manager. The Court denied summary judgment, however, in part because it concluded that the Plaintiff might have been able to perform those essential functions with a reasonable accommodation.

The Defendant anticipates that it will renew the request, which it made at the first trial, and which the Court denied, to have the Court treat as conclusively established its prior determination that the Plaintiff's ability to work long hours on short notice at unpredictable times was an essential function of his position as a Store Manager. *See* Fed. R. Civ. P 56(g) ("If the court does not grant all the relief requested by [a motion for summary judgment], it may enter an order stating any

material fact . . . that is not genuinely in dispute and treating the facts as established in the case."). As O'Reilly has previously argued, such an order is appropriate because the issue of whether a function is "essential" to a job is analytically distinct from, and antecedent to, the question of whether it is "reasonable" to provide an accommodation that will allow an employee to perform the function. *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 78 (1st Cir. 2010) ("[A] court must evaluate the essential functions of the job without considering the effect of [any] special arrangements.") (quotation marks omitted)).  Here, we submit, there is no need to spend more time and judicial resources re-litigating that issue in front of the jury.

    2.    <u>Admissibility of Expert Opinions</u>

The Plaintiff's expert psychologist, Charles Robinson, PhD, will offer some opinions that are admissible, although they will be subject to challenge on cross-examination.  There are some opinions, however, that O'Reilly will ask the Court to exclude altogether.

Dr. Robinson's evaluation consisted of meeting with Brian Bell on one day (April 4, 2017), and then arranging for him to take two psychological tests.  Dr. Robinson testified, based on his one meeting with Mr. Bell (and things Mr. Bell told him during that meeting), that he could "confidently predict" that whenever Mr. Bell felt well enough to work more than his scheduled hours, he would do so if asked.  According to Dr. Robinson, "that's how I think this guy is built." (*Robinson Depo.* at 71:4-5.)  This is classic character evidence.  Dr. Robinson does not purport to be rendering an opinion rooted in objective clinical data: he is simply vouching for Mr. Bell's work ethic based on his subjective impressions of a man he met once.

O'Reilly will also object to (1) Any testimony by Dr. Robinson to the effect that Mr. Bell suffers from attention-deficit disorder, because Dr. Robinson has testified in his deposition that he himself would not make that diagnosis in Mr. Bell's case, and because he has never seen records

reflecting that diagnosis in Mr. Bell's case (*Robinson Depo.* at 61:24-62:3, 64:25-65:7.); and (2) Any testimony by Dr. Robinson to the effect that Mr. Bell experienced a period of disability because of reactions to the medications he was prescribed, or even that he suffered any adverse reactions to those medications, as Dr. Robinson offered no such opinion in his Rule 26 report or in his deposition.

### 3. Bifurcation of liability and damages

O'Reilly will also renew its request that the Court exercise its authority under Fed. R. Civ. P. 42(b) to order separate trials of liability and damages. At the first trial, the Court bifurcated the punitive damage phase of the case but left the jury to consider compensatory damages along with issues of liability. O'Reilly believes the Court was correct to separate the issue of punitive damages from the rest of the case (and will file another motion to that effect, if necessary), but asks the Court to reconsider its earlier decision to try liability and compensatory damages together.

As O'Reilly noted at the first trial, there is a real and substantial risk that the evidence on the issue of compensatory damages might unfairly prejudice O'Reilly. Mr. Bell's medical records show that he became suicidal for a time after he lost his job, and that evidence will naturally engender great sympathy. Bifurcation will allow the Court to ensure that sympathy does not unfairly affect the jury's liability analysis.

Notably, moreover, the issues before the Court now are different, and narrower, than they were when the case was first tried. The disparate treatment and retaliation claims are no longer in the case, leaving only the failure-to-accommodate claim to be tried. "In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to section 102(b)(5) of the Americans with Disabilities Act of 1990 . . . , [compensatory and punitive] damages may not be awarded under this section where the covered entity demonstrates good faith

efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business." 42 U.S.C.A. § 1981a (a)(3). Thus, the jury can find that O'Reilly failed to reasonably accommodate Mr. Bell, but that O'Reilly nevertheless acted in good faith, precluding an award of compensatory damages. *E.E.O.C. v. St. Joseph's Hosp., Inc.,* No. 8:13-CV-2723-T-30TGW, 2015 WL 4757567, at *7 (M.D. Fla. Aug. 12, 2015), *aff'd in part, rev'd in part sub nom. United States Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.,* 842 F.3d 1333 (11th Cir. 2016).

In short, O'Reilly submits that the removal of the disparate treatment and retaliation claims from the case accentuates the importance of ensuring that the jury's verdict on the failure-to-accommodate claim is untainted by the prejudice that could well result from presentation of the emotional distress evidence that is relevant to the issue of compensatory damages.

C. **Proposed Stipulations**

Counsel for the parties will likely enter into a stipulation concerning the wages earned by the Plaintiff since his separation from O'Reilly.

D. **Defendant's Witnesses**

1. Nicholas Thomas, O'Reilly Auto Parts, 4024 Glenside Dr., Henrico, Virginia 23228 (formerly of Windham, ME)

2. Christopher Watters, 87 Seventh St., Bangor, ME

3. Donald Beck, current address unknown

4. Amanda Hall, Director of Team Member Relations and Leave of Absence, O'Reilly Auto Parts, 233 S. Patterson Avenue, Springfield, MO

5. Alison Rush, O'Reilly Auto Parts, 233 S. Patterson Avenue, Springfield, MO

    6. Judy Weitzel (by deposition), 117 Dry Creek Trail, Ennis, MT (formerly of Maine)

**E.** **Defendant's Exhibits**

1. Employment Application (BPF 014-018)

2. Store Manager Job Description

3. On-Boarding Procedures (OBP 2012 001-010)

4. Harassment-Free Workplace policies (TS HNS 001-026 & TS HS 001-023)

5. On-Boarding Hiring Process (HP 001-029)

6. On-Boarding Hiring Process - Store Managers (HP 2015 001-050)

7. ADA Policy (ADA 001-015)

8. New Team Member Acknowledgment Form (BPF 021)

9. Performance Evaluations (BPF 001 - 004)

10. Progressive Discipline Form (BPF 036)

11. Fitness for Duty Form (6/4/15)

12. Weitzel letter (6/4/15)

13. Emails contained in Leave of Absence File (LOA 001-061)

14. Assistant Store Manager Job Description

DATED at Portland, Maine this 22nd day of July, 2021.

                                          /s/ Christopher C. Taintor
                                          Christopher C. Taintor, Esq.
                                          *Attorney for Defendant*

                                          NORMAN, HANSON & DeTROY
                                          Two Canal Plaza
                                          P.O. Box 4600
                                          Portland, Maine 04112-4600
                                          (207) 774-7000
                                          ctaintor@nhdlaw.com
                                          tsavage@nhdlaw.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

## Certificate of Service

I hereby certify that on July 22, 2021, I electronically filed Defendant's Final Pretrial Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Christopher C. Taintor
Christopher C. Taintor, Esq.
*Attorney for Defendant*

NORMAN, HANSON & DeTROY
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112-4600
(207) 774-7000
ctaintor@nhdlaw.com