UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN BELL, | |
|     Plaintiff, | |
|       v. | Civil Action No.  1:16-cv-00501-JDL |
| O'REILLY AUTO ENTERPRISES, LLC d/b/a O'REILLY AUTO PARTS, | |
|     Defendant. | |

### PLAINTIFF'S MOTION IN LIMINE REGARDING DOCUMENTS RECENTLY DISCLOSED BY DEFENDANT

Now Comes the Plaintiff through counsel and moves the Court to exclude certain documents recently disclosed by Defendant as potential trial exhibits for the reasons set out below.

On September 17, 2021, Defendant produced two sets of documents that it intends to introduce as exhibits at trial.  The documents are, as described by Defendant:

(1)  the Alarm Activity Report for the Belfast store, showing who opened and closed the store during the last few weeks of Mr. Bell's active employment; and

(2)  Sales records for the Belfast store for each of the days that the Alarm Activity Report shows Mr. Bell as having both opened and closed the store.

The documents are identified as Defendant's Exhibits 28-33 on the Joint Exhibit List and are attached hereto as Attachment 1. Defendant indicates that they plan to introduce these documents at trial and question Brian Bell about the documents during his cross-examination and/or discuss the documents with Defendant's own witness, Nick Thomas.  The attached copies of the documents include highlights created by Defendant's counsel for purposes of emphasizing information that purportedly reflects when Mr. Bell was or was not working.

1

Discovery in this matter closed over four years ago. During discovery, Plaintiff determined that the parties had factual disputes regarding the number of hours that Mr. Bell worked during the course of his employment, the number of hours worked by other employees at the Belfast store, and the number of hours worked by store managers at other stores. The Plaintiff specifically requested documents relating to the hours actually worked by Store Managers in Maine (including but not limited to Mr. Bell) during the period of 2014 and 2015 as well as the hours worked by employees in the Defendant's Belfast store (including but not limited to Mr. Bell) during the period from January 1, 2015 to December 31, 2015. *Copies of Plaintiff's Interrogatory No. 16 and Requests for Production Nos. 20 & 21 and Defendant's objections and responses are attached hereto in Attachment 2.*[1]  Defendant objected to the requests for production arguing that the documentation sought was not relevant and, with regard to the request for records evidencing Store Manager hours, that production of the documents "which might reflect those hours" would not be proportional to the needs of the case. In response to RPD No. 20, Defendant produced no documentation, instead responding, "Because Store Managers are salaried employees there are no records of hours they were scheduled to work or actually worked". In response to RPD No. 21, Defendant only provided some documentation relating to Belfast employees' scheduled hours as reflected in one of their systems.[2]

---

[1] In discovery the Plaintiff also requested all documents that Defendant intended to produce at trial, all documents tending to prove or disprove any allegations made in Plaintiff's Complaint, all documents tending to prove or disprove any affirmative defense made by Defendant in its Answer, all documents including but not limited to digital and/or electronically stored information that relate to or mention Plaintiff, and all documentation that Defendant intended to introduce as evidence that a schedule limitation of nine hours per day- five days per week eliminates an essential function of the Store Manager position and would be an undue hardship on Defendant. *See Plaintiff's Requests for Production 1, 5, 6, 9, 11, and 12 and Defendant's objections and responses contained in Attachment 2.* The recently produced documents would have been responsive to these requests as well.

[2] The Plaintiff marked the portion of this documentation relating to Mr. Bell as Plaintiff's Exhibit 14 during the first trial and will do as again for the upcoming trial.

Along similar lines, in Interrogatory No. 16, Plaintiff requested that Defendant identify instances in 2014 and 2015 that Store Managers worked more than nine hours per day, five days per week or 45 hours per week. Defendant similarly objected on the basis of relevance and burden and refused to provide the requested information. In its objection, Defendant also indicated that, "answering this interrogatory would require the Defendant to interview every Store Manager…or alternatively review the sales records of every store during those years. Accordingly, it is overly burdensome and not proportional to the need of the case." In its response to Interrogatory No. 16 the Defendant responded, in part, "Because Store Managers are salaried their work hours are not recorded.  Therefore, O'Reilly Auto Parts has no information available to it which would provide a reliable basis for estimating the actual number of hours worked by any Store Manager."  In a subsequent discovery letter the Plaintiff proposed that if the burden of reviewing sales records was too great for the Defendant as they indicated in their objection that they could produce those sales records to Plaintiff and Plaintiff would review them. *See February 10, 2017 Discovery Letter, attached as Attachment 3, at 2-3*.  Defendant responded in a March 27, 2017 letter stating:

> Although our objection suggested that one way of determining when Store Managers were working might be to review sales records, that would actually not be a reliable method of accurately answering this Interrogatory.  Sales records could show that a Store Manager engaged in a transaction at 7:00 a.m. and another transaction at 7:00 p.m on the same day.  Based on sales records alone, however, O'Reilly could not say with confidence that he/she was actually in the store the whole day.  At most, a review of these records would provide a basis for speculating about how often Store Managers worked more than nine hours per day, five days per week or 45 hours per week.  That speculation would not itself be admissible, and it would not lead to the discovery of admissible evidence.

*See March 27, 2017 Discovery Letter, attached as Attachment 4, at 2.* Defendant refused to provide the requested sales records or any other documents in discovery which related to the

hours worked by Mr. Bell, the other employees in the Belfast Store, or store managers at other stores.

Defendant now seeks to use a subset of the same documents at trial that it refused to provide in discovery on the basis that there was no documentation or information in its possession that would provide a reliable basis for determining hours actually worked by store managers in Maine and Belfast store employees. Defendant's use of the documents would only serve to, in Defendant's own words, provide a basis for inadmissible speculation regarding hours worked by Mr. Bell. Defendant's analysis of the evidence in its discovery letter is correct. The fact that an employee other than Mr. Bell entered the security code at opening or closing does not mean that Mr. Bell was not present at the time, merely that another employee entered the code. Evidence that an employee other than Mr. Bell completed a sale does not mean that Mr. Bell was not working and doing some other duty that was a higher priority for a Store Manager such as completing paperwork, making a delivery, or performing a sales call. Defendant seeks to use the records in a manner that Defendant has already conceded would not comport with the rules of evidence. Since the Defendant would seek to use the records in a manner that is not permitted by the rules of evidence the Court should preclude their introduction at trial.

The records should also be excluded because this is a clear cut case of a party failing to produce responsive discovery and then trying to use some of the previously requested discovery at trial which is expressly prohibited by the Rules.  F.R.Civ.P. 37(c)(1) provides that "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information…to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[3] As set out above, these documents and the

---

[3] Rule 26(e) requires the timely supplementation of a party's responses to initial disclosures, interrogatories, requests for production, and requests to admit. F.R.Civ.P. 26(e).

4

information contained in these documents was clearly requested and denied during discovery and there is no justification for Defendant's decision to withhold them then and use them now. As discussed above and below, permitting the Defendant to use these documents at trial would also substantially harm the Plaintiff.

There are other records that were responsive to Plaintiff's discovery requests which were withheld by Defendant, such as documentation reflecting deliveries, sales calls, emails and other aspects of the store operations typically performed by the store manager that would be more relevant to the issue of how many hours Mr. Bell and other store managers actually worked. Rather than produce these more probative documents the Defendant seeks to cherry-pick documents which it believes would support its theory of the case. Defendant also limits the documentation in its exhibits to records reflecting a few weeks and days that Defendant believes will benefit its own position in the case. The fact that Defendant has opted to produce a subset of responsive documentation and withhold documentation which would be more probative of Mr. Bell's activities and work hours means that if Defendant is permitted to introduce these limited documents, the jury would be given the inaccurate impression that the limited documents reflect the universe of available documentation from which to speculate. If Defendant had produced relevant documentation during discovery this would not be an issue now since both parties would have equal access to all categories of responsive documents. Defendant should not be permitted to benefit from refusing to respond to discovery on the subject and then produce extremely limited and selective documents for purposes of its own trial presentation.  Defendant took the position during discovery that none of the requested documentation, including those documents that Defendant now seeks to admit as exhibits, were even discoverable much less admissible and should be bound by that position.

5

In addition, if Defendant had produced the documentation requested by Plaintiff in discovery relating to hours worked at the Belfast store and other stores, such as sales records for Mr. Bell and other store managers, documentation reflecting deliveries and sales calls made by Mr. Bell and other store managers and emails and other communications sent by Mr. Bell and other stores managers, the Plaintiff would have had the opportunity to analyze this information and compare the records relating to Mr. Bell to other store managers as well as other records showing hours actually worked by other employees in the Belfast store. This documentation would have allowed a comparison of the Belfast store with other stores, and Mr. Bell with other store managers, in a way that would have permitted Plaintiff to put the limited records now offered by Defendant in context, rebut the arguments regarding the records made by Defendant, and potentially use the full set of documentation to support Plaintiff's claims. Plaintiff has been deprived of this opportunity.

Furthermore, if Defendant had produced the records responsive to Plaintiff's requests in discovery, the Plaintiff would have had the opportunity to depose witnesses including Nick Thomas, Chris Watters, employees working in the Belfast Store and other stores reflected in the records, and the Defendant through a Rule 30(b)(6) deposition in order to fully evaluate the documentation, potentially use this deposition testimony to support Plaintiff's claims during summary judgment and the first trial, and also fully prepare for Defendant's potential use of the documentation. For example, Plaintiff's counsel would have been able to determine whether or not the documentation is authentic and understand the meaning of the codes and abbreviations in the documentation. By refusing to produce documentation responsive to Plaintiff's discovery requests and then producing a subset of selected documents on the eve of trial the Defendant has deprived the Plaintiff of any meaningful opportunity to question witnesses and the corporate

Defendant regarding the documents at issue in advance of trial in order to evaluate the documentation. Questioning witnesses for the first time at trial regarding the newly disclosed documents would put Plaintiff at a serious disadvantage and would be unfair. Chris Watters is unavailable to appear at trial and so there would be no opportunity to ask him about the documents, even for the first time at trial. Permitting the Defendant to use these documents at trial would therefore severely prejudice the Plaintiff and allow Defendant to benefit from its decision to withhold this entire category of documentation during discovery and then produce its selected documents shortly before trial begins.

For these reasons, the Defendant should not be permitted to introduce the proposed documents at trial.

Date: September 29, 2021                    /s/ Chad T. Hansen_____
                                            Chad T. Hansen
                                            Attorney for Plaintiff

                                            Maine Employee Rights Group
                                            92 Exchange Street, 2nd Floor
                                            Portland, ME 04101
                                            207-874-0905

CERTIFICATE OF SERVICE

I certify that I served the foregoing document upon all counsel via the Court's ECF system.

Date:   September 29, 2021                  /s/ Chad T. Hansen_____
                                            Chad T. Hansen