UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN BELL, | |
| Plaintiff, | |
| v. | Civil Action No.  1:16-cv-00501-JDL |
| O'REILLY AUTO ENTERPRISES, LLC d/b/a O'REILLY AUTO PARTS, | |
| Defendant. | |

PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's Report of Final Pretrial Conference and Order (ECF No. 172 at 3), Plaintiff proposes the following jury instructions for this case.

I.      General Instructions

A.  Burden of Proof

Throughout my instructions I will use the term "preponderance of the evidence" when I instruct you on the burden of proof that either Mr. Bell or Defendant must meet.  These instructions will ask you to determine whether one party or the other has proven something by a "preponderance of the evidence."  To determine whether something has been proven by a "preponderance of the evidence," you must determine whether, in light of all of the facts, you believe it is more likely true than not.[1]

B.  Evidence

The evidence from which you are to decide what the facts are consists of (1) sworn testimony of witnesses, here in Court, by deposition, or by prior sworn testimony both on direct

---

[1] Adapted from jury instructions in *Prescott v. Rumford Hospital*, 2:13-cv-00460-JDL (D. Me.) (Exhibit 1).

and cross-examination, regardless of who called the witness; (2) exhibits that have been received into evidence; and (3) stipulated facts that I have provided to you.[2]

C.  What is Not Evidence

In reaching your verdict you may consider only the testimony, exhibits, and stipulated facts received into evidence.  Certain things are not evidence and you may not consider them in deciding what the facts are.  I will list them for you.

1.  Arguments and statements by lawyers are not evidence;

2.  Questions and objections by lawyers are not evidence;

3.  Testimony I have instructed you to disregard is not evidence; and

4.  Anything you may have seen or heard when the Court was not in session is not evidence.[3]

D.  Direct and Circumstantial Evidence

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is indirect evidence, that is, proof of a fact or chain of facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly.  You are entitled to consider both kinds of evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.[4]

E.  Credibility of Witnesses

In deciding what the facts are, you must consider all of the evidence.  In doing this, you must decide which testimony to believe and which testimony not to believe.  You may disbelieve

---

[2]  Adapted from *Prescott* jury instructions.
[3]  Adapted from *Prescott* jury instructions.
[4]  Adapted from *Prescott* jury instructions.

all or any part of any witness's testimony.  You might want to take into consideration such factors as the witness's conduct and demeanor while testifying; their apparent fairness or any bias they may have displayed; any interest you may discern that they may have in the outcome of the case; any prejudice they may have shown; their opportunities for seeing and knowing the things about which they have testified; the reasonableness or unreasonableness of the events that they have related to you in their testimony; and any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict their versions of the events.

In deciding whether to believe a witness, keep in mind that people sometimes forget things.  You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other.  You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other or vice versa.

All of these matters are for you to consider in deciding the facts.[5]

F.   Opinion Evidence, Expert Witnesses

You have heard testimony from people described as experts.  People who, by education and experience, have become expert in some field may state their opinion in that field and may also state their reasons for the opinion.

Expert opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's

---

[5] Adapted from *Prescott* jury instructions.

3

education and experience, the reasons given for the opinion, and all the other evidence in the case.[6]

### G.  Liability of Corporations

O'Reilly Auto Enterprises, LLC is a corporation.  Corporations can act only through their employees.  A corporation is responsible for the acts of its employees when they are acting within their authority.

The fact that O'Reilly Auto Enterprises is a corporation and Mr. Bell is an individual should not affect your decision.  All persons, whether they be corporations or individuals, are equal before the law and are entitled to the same fair and conscientious consideration by you as any other person.[7]

### II.    Rules of Law

### A.  Introduction[8]

In this case, Mr. Bell makes a claim based on a federal law known as the Americans with Disabilities Act, which I will refer to as the ADA in these instructions, and a state law known as the Maine Human Rights Act, which I will refer to as the MHRA.

Under both the ADA and MHRA, under certain circumstances, an employer must provide reasonable accommodations to qualified individuals with disabilities.  Terms such as "disability," "qualified individual," and "reasonable accommodation" are defined by the ADA and MHRA and I will instruct you on the meaning of those terms.

---

[6]  Adapted from jury instructions given in *Warren v. United Parcel Service, Inc.*, 06-84-P-H (D. Me.) (Exhibit 2).
[7]  Adapted from *Prescott* jury instructions.
[8]  This introductory instruction is adapted from the Third Circuit's Pattern Jury Instructions 9.0. *See* http://www.ca3.uscourts.gov/sites/ca3/files/9_Chap_9_2018_March.pdf (visited 09/28/21).

Mr. Bell claims that his Attention-Deficit/Hyperactivity Disorder (ADHD), Tourette's syndrome, and/or Major Depressive Disorder are disabilities under the ADA and MHRA.  Mr. Bell also claims that O'Reilly Auto Enterprises refused to provide him with a scheduling accommodation which he contends violated his right to reasonable accommodations under the ADA and MHRA.

O'Reilly Auto Enterprises denies Mr. Bell's claims.  Further, O'Reilly Auto Enterprises asserts that it would have been an undue hardship for it to employ Mr. Bell with the scheduling accommodation that he requested.  The term "undue hardship" is another term defined by the ADA and MHRA and I will instruct you on the meaning of that term as well.

As you listen to these instructions, please keep in mind that many of the terms I will use, and you will need to apply, have a special meaning under the ADA and MHRA.  So, please remember to consider the specific definitions I give you, rather than using your own opinion of what these terms mean.

B.  Purpose of the ADA and MHRA

In passing the ADA, Congress found that 43 million Americans suffer from one or more physical or mental disabilities and that historically such individuals had been subjected to discrimination in critical areas such as employment. Congress further concluded that such discrimination was costing the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity. Accordingly, Congress found that the proper goal for our Nation is to assure that individuals with disabilities have the opportunity to attain economic self-sufficiency by eliminating discrimination in employment against them.[9]

---

[9] 42 U.S.C. § 12101; *see Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979) (under discrimination laws, it would be useful to discuss with the jury policies underlying law and plaintiff's rights thereunder).

It is also the policy of the State of Maine as expressed in the Maine Human Rights Act ("MHRA") to prohibit discrimination on the basis of disability in order to ensure that disabled individuals have life with dignity.[10]

C.  Failure to Accommodate

The ADA and MHRA require employers to provide reasonable accommodations to employees who are disabled unless the accommodation would impose an undue hardship on the employer.[11]

Mr. Bell has made a claim that O'Reilly Auto Enterprises failed to provide him with a reasonable accommodation, namely a schedule of 45 hours per week but no limit on unscheduled hours.  To succeed on his claim, Mr. Bell must prove the following four elements:  (1) that he had a disability under either the ADA or MHRA; (2) that he was able to perform the essential functions of his Store Manager job either with or without reasonable accommodations; (3) that he made a request for an accommodation that was sufficiently direct and specific so as to make O'Reilly Auto Enterprises aware that his accommodation request was related to his disability (or disabilities); and (4) that O'Reilly Auto Enterprises refused to provide Mr. Bell with a reasonable accommodation.[12]

To prevail on this claim, Mr. Bell need not show that O'Reilly Auto Enterprises had discriminatory intent.[13]  Mr. Bell can also prevail even if he could, with some difficulty, perform his essential job functions without an accommodation.[14]

---

[10] 5 M.R.S.A. § 4552; *Loeb*, 600 F.2d at 1003.

[11]  Adapted from the Court's Pattern Jury Instruction 3.2.

[12]  *Bell v. O'Reilly Auto Enterprises, LLC*, 972 F.3d 21, 24 (1st Cir. 2020); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009); and *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 20 (1st Cir. 2004).

[13]  This Court's Pattern Jury Instruction 3.2.

[14] *Bell v. O'Reilly Auto Enterprises, LLC*, 972 F.3d 21, 24 (1st Cir. 2020).

If Mr. Bell satisfies these four elements of his claim, O'Reilly Auto Enterprises can still prevail if it shows that accommodating Mr. Bell would have been an undue hardship. In a moment, I will explain the legal definition of undue hardship but, first, I want to define the terms that I used when I described those four elements.

    1.  Definition of disability

The term "disability" has different meanings under the ADA and MHRA. I will first instruct you on what the term means under the ADA and then I will instruct you on what the term means under the MHRA.

    a.  ADA[15]

Under the ADA, a "disability" is a "physical or mental impairment" that "substantially limits" one or more "major life activities." A "physical impairment" is any condition that prevents the body from functioning normally. A "mental impairment" is any condition that prevents the mind from functioning normally. [16]

A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions.[17]

Brain functioning, neurological functioning, sleeping, and the ability to concentrate are major life activities.[18]

An impairment "substantially limits" a major life activity if it prevents or significantly restricts a person from performing the activity, compared to an average person in the general

---

[15] Except where otherwise noted, this instruction is adapted from Eleventh Circuit Model Jury Instruction 4.11. *See* http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstruction.pdf. (visited 09/28/21)

[16] 3d Circuit instruction 9.2.1

[17] Eleventh Circuit Model Jury Instruction 4.12.

[18] See 42 U.S.C. § 12102(2).

population.  An impairment that substantially limits one major life activity is a disability even if it does not limit any other major life activity.

To decide whether Mr. Bell's ADHD, Tourette's syndrome, or Major Depressive Disorder substantially limited his brain functioning, neurological functioning, ability to concentrate, or ability to sleep, it does not matter that his ADHD, Tourette's syndrome, or Major Depressive Disorder can be corrected by the use of medication, therapy, or other medical assistance.  In other words, when you consider whether these conditions are disabilities, you should consider how they would affect Mr. Bell if he was not taking any medication or receiving medical care.[19]

Furthermore, if Mr. Bell's ADHD, Tourette's syndrome, or Major Depressive Disorder are not always a problem but flare up from time to time, that can be a disability if it would substantially limit a major life activity when active.

Applying these principles, some types of impairments will, in virtually all cases, result in a determination that the individual with the impairment is disabled under the ADA.  For example, it should be easily concluded that Major Depressive Disorder substantially limits the major life activity of brain function.[20]

### b.  MHRA[21]

Now I will instruct you on the MHRA's definition of disability.  If an individual is disabled under the ADA, he is also disabled under the MHRA.  However, the MHRA is broader than the ADA and, in addition to covering individuals who had impairments that substantially limit a major life activity, it also includes individuals who had impairments that significantly

---

[19]  42 U.S.C. § 12102(4)(E).
[20]  29 C.F.R. § 1630.2(j)(3)(ii)-(iii)
[21]  This instruction is based on the MHRA definition of disability at 5 M.R.S.A. § 4553-A.

impair physical or mental health.  For an impairment to significantly impair physical or mental health, it must have an actual or expected duration of more than 6 months and impair health to a significant extent as compared to what is ordinarily experienced in the general population.

Furthermore, under the MHRA, Major Depressive Disorder is a disability regardless of how severe it is.  So, if you find that Mr. Bell had Major Depressive Disorder, you must find that he was disabled under the MHRA.

2.   Definition of essential function

In order to decide what the essential functions of a job are, you may consider the following factors:

1.   Written job descriptions;

2.   The employer's judgment as to which functions of the job are essential;

3.   The amount of time spent on the job performing the function in question;

4.   Consequences of not requiring the person to perform the function;

5.   The work experience of people who have held the job;

6.   The current work experience of people in similar jobs;

7.   Whether the reason the position exists is to perform the function;

8.   Whether there are a limited number of employees available among whom the performance of the function can be distributed; and

9.   Whether the function is highly specialized and the individual in the position was hired for his or her expertise or ability to perform the function.

No one factor is necessarily controlling. You should consider all of the evidence in deciding whether a job function is essential.[22]

        3.   Definition of reasonable accommodation

A reasonable accommodation is a modification or adjustment to the work environment or to the manner in which a job is performed.  You should determine what is reasonable based on the facts as you find them.  The duty to provide reasonable accommodation is a continuing one and so may require more than one effort.[23]  If a reasonable accommodation turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer is not required to continue the accommodation but must consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship.[24]

By way of illustration, under the ADA and MHRA, a "reasonable accommodation" may include:

- Part-time or modified work schedules;

- Job restructuring;

- Making existing facilities used by employees readily accessible to and usable by individuals with disabilities;

- Acquisition or modification of equipment or devices;

- Appropriate adjustment or modifications of examinations, training materials, or policies;

- The provision of qualified readers or interpreters;

---

[22] 29 C.F.R. § 1630.2(n); *Ward v. Mass Health Res. Inst., Inc.*, 209 F.3d 29, 34 (1st Cir. 2000); and *Gillen v. Fallon Ambulance Svc., Inc.*, 283 F.3d 11, 25 (1st Cir. 2002).
[23] This paragraph, up to this point, is adapted from the *Prescott* jury instructions.
[24]  EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act at 32 (https://www.eeoc.gov/policy/docs/accommodation.html#other) (visited 09/28/21).

- Granting additional leave beyond that allowed by the employer's leave policy;

- Reassignment to a vacant position; and

- Other similar accommodations for individuals with disabilities.[25]

Before considering reassignment as a reasonable accommodation, employers should first consider those accommodations that would enable an employee to remain in his current position. Reassignment is the reasonable accommodation of last resort and is required only after it has been determined that: (1) there are no effective accommodations that will enable the employee to perform the essential functions of his current position, or (2) all other reasonable accommodations would impose an undue hardship.[26] Reassignment may not be used to limit, segregate, or otherwise discriminate against employees with disabilities by forcing reassignments to undesirable positions. If reassignment is appropriate, employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant, within a reasonable amount of time.[27]

A reasonable accommodation may also include transferring non-essential job functions to another employee. However, an employer does not have to transfer essential job functions.[28]

---

[25] This paragraph is adapted from the *Prescott* jury instructions.

[26] *EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* at Reassignment (https://www.eeoc.gov/policy/docs/accommodation.html#reassignment) (visited 09/28/21).

[27] Language in this paragraph was taken from the Appendix to EEOC regulation 29 C.F.R. § 1630.2(o) (https://www.gpo.gov/fdsys/pkg/CFR-2011-title29-vol4/xml/CFR-2011-title29-vol4-part1630.xml) (visited 09/28/21).

[28] *EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* at Job Restructuring; *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 962-63 (7th Cir. 2014); and *Shell v. Smith*, 789 F.3d 715 (7th Cir. 2015).

### 4. Interactive Process

Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee or, if necessary, with his doctor whether there is a reasonable accommodation that will permit him to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.[29] An employer who fails to engage in such an interactive process in good faith violates a disabled employee's rights if the employee could have performed his essential job functions with a reasonable accommodation even if it was not the accommodation he requested. As such, Mr. Bell can prevail on his claim if (a) O'Reilly Auto Enterprises failed to engage in the interactive process in good faith and (b) Mr. Bell could have performed his essential job functions with a reasonable accommodation regardless of whether he requested that accommodation at the time of the interactive process.[30]

### 5. Undue Hardship

If Mr. Bell establishes the four elements of his claim that I instructed you about earlier, or establishes that O'Reilly Auto Enterprises failed to engage in the interactive process in good faith and he could have performed his essential job functions with a reasonable accommodation, like I just discussed, you must find in favor of Mr. Bell unless O'Reilly Auto Enterprises proves by a preponderance of the evidence that it would have been an undue hardship for it to

---

[29] This paragraph, up to this point, was adapted from Seventh Circuit Model Jury Instruction 4.07. *See* http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf (visited 09/28/21).

[30] *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317-18 (3d Cir. 1999); *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014); and *Barnett v. U.S. Airways, Inc.,* 228 F.3d 1105, 1116 (9th Cir. 2000), *vacated sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

accommodate Mr. Bell.  An "undue hardship," under the ADA and MHRA, is an action that would create significant difficulty or expense for O'Reilly Auto Enterprises, considering

- The nature and cost of the accommodation;

- The overall financial resources of O'Reilly Auto Enterprises;

- The effect of the accommodation on expenses and resources;

- The impact of the accommodation on the operations of O'Reilly Auto Enterprises, including the impact on the ability of other employees to perform their duties and the impact on the employer's ability to conduct business.[31]  However, O'Reilly Auto Enterprises cannot prove an undue hardship by showing that providing Mr. Bell's requested accommodation would have had a negative impact on the morale of its other employees.[32]

In assessing the cost and effect of the accommodation on expenses and resources, you may consider whether O'Reilly Auto Enterprises could have taken efforts to minimize the cost of the accommodation by spreading the costs over time.[33]

D.  Damages[34]

I am now going to discuss damages issues.  However, the fact that I instruct you on damages does not represent any view by me that you should or should not find against O'Reilly Auto Enterprises.

---

[31]  The language in these bullets and the paragraph preceding the bullets, to this point, is adapted from the Court's Pattern Jury Instruction 3.2.

[32]  Appendix to 29 C.F.R. § 1630.15(d) (https://www.gpo.gov/fdsys/pkg/CFR-2011-title29-vol4/xml/CFR-2011-title29-vol4-part1630.xml) (visited 09/28/21).

[33]  *See* 5 M.R.S.A. § 4553(9-B)(K).

[34]  Except where otherwise noted, the instructions on damages are adapted from the *Prescott* jury instructions.

If you find that O'Reilly Auto Enterprises unlawfully violated Mr. Bell's rights as I have explained to you, then you must determine the amount of damages, if any, that Mr. Bell has sustained. You must not make a compromise between the liability and damages issues. You must determine the liability issues first. You should proceed to the damages issues only if you have determined that Mr. Bell has proved that O'Reilly Auto Enterprises acted in violation of one or more of the laws that I have described to you today.

Mr. Bell is seeking back pay and compensatory damages against O'Reilly Auto Enterprises.

Any damages you award must be based on the evidence and on a finding by you that Mr. Bell has convinced you that he has more likely than not been damaged as he claims to have been damaged. Damages may not be awarded on the basis of guesswork or speculation, nor on the basis of passion, prejudice, or sympathy. Damages must be established to a reasonable certainty, but not to a mathematical certainty.

If you find Mr. Bell is entitled to recover damages, you must award an amount of damages that will justly and fairly compensate him for the losses resulting from the injuries sustained.

If you should find that Mr. Bell is entitled to damages, in fixing the amount of your award of back pay or compensatory damages, you may not add to an otherwise just award for back pay or compensatory damages any sum to punish O'Reilly Auto Enterprises, or to serve as an example or warning to others. Nor may you include in your award any sum for the court costs or attorneys' fees.

14

1.  Back Pay Damages

If you find that Mr. Bell has proved by a preponderance of the evidence that O'Reilly Auto Enterprises violated his rights then you may award lost wages, also called "back pay," equal to the value of salary and benefits that he would have received from O'Reilly Auto Enterprises but for his termination up to the present, minus the value of salary and benefits actually received by Mr. Bell to the present.

Mr. Bell had a duty to mitigate his damages—that is, to take reasonable steps that would reduce the damages.  If he failed to do so, then he is not entitled to recover any damages that he could reasonably have avoided incurring.  O'Reilly Auto Enterprises has the burden of proving by a preponderance of the evidence that Mr. Bell failed to take such reasonable steps.[35]  To meet this burden, O'Reilly Auto Enterprises must prove (1) that jobs substantially equivalent to Mr. Bell's Store Manager position were available in the geographic area where he resided and (2) Mr. Bell failed to use reasonable diligence to find one of those substantially equivalent jobs.[36]  A position is only "substantially equivalent" if it provides virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.[37]

---

[35]  The language in this paragraph to this point was adapted from the Court's Pattern Jury Instruction 9.1.
[36]  *See Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999).
[37]  *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003); *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 85 (3d Cir. 2009); and *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-32 (1982)("Th[e] duty [of an employee to mitigate their damages]… requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position he forfeits his right to back pay if he refuses a job substantially equivalent to the one he was denied.") (footnotes omitted).

2.  Compensatory Damages

If you find that Mr. Bell has proved by a preponderance of the evidence that O'Reilly Auto Enterprises violated his rights then you may award compensatory damages.  Compensatory damages are awarded for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses if you determine that Mr. Bell has proven by a preponderance of the evidence that he experienced any of these consequences as a result of O'Reilly Auto Enterprises' violation of his rights.  Compensatory damages are not allowed as a punishment and cannot be imposed or increased in order to penalize O'Reilly Auto Enterprises.

No evidence of the monetary value of intangible things like emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses is available and there is no standard I can give you for fixing any compensation to be awarded for these injuries.  Even though it is difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying recovery on this element of damages.  You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, of the amount of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses you find that Mr. Bell has undergone and can probably be expected to suffer in the future as a result of O'Reilly Auto Enterprises' conduct.  And you must place a monetary value on this, attempting to come to a conclusion that will be fair and just to both of the parties.  This will be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you for assessing this element of damages.  If you have found in favor of Mr. Bell but find that his damages have no monetary value, you may award him nominal or token damages such as one dollar ($1.00) or some other minimal amount.

3. Punitive Damages[38]

Now that you have rendered a verdict and found O'Reilly Auto Enterprises liable, you need to consider whether to award punitive damages against O'Reilly Auto Enterprises. You may award punitive damages under federal law only if you find that Mr. Bell has proven by a preponderance of the evidence that O'Reilly Auto Enterprises has engaged in intentional discrimination and has done so with malice or reckless indifference to Mr. Bell's protected rights. "Malice" means that O'Reilly Auto Enterprises' conduct was motivated by ill will towards Mr. Bell because of his disability, his request for or his need of reasonable accommodation. "Reckless indifference" means that O'Reilly Auto Enterprises knew or should have known that Mr. Bell's rights would be violated by its actions or omissions. Under state law, Mr. Bell also must prove either "malice" or "reckless indifference" by clear and convincing evidence.[39] This clear and convincing evidence standard is different than the preponderance of the evidence standard that I described earlier. To determine that something has been proven by clear and convincing evidence, you must be convinced that it is highly probable.[40]

If you decide to award punitive damages, the amount to be awarded is within your sound discretion. The purpose of a punitive damage award is to punish a defendant or to deter a defendant and others from similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether O'Reilly Auto Enterprises may be adequately punished by an award of compensatory damages only, or whether the conduct is so malicious or reckless that compensatory damages are inadequate to punish the wrongful conduct. The amount

---

[38] Except where specifically indicated, this punitive damages instruction was adapted from the *Prescott* jury instructions.
[39] *Batchelder v. Realty Res. Hosp., LLC*, 914 A.2d 1116, 1124 (Me. 2007).
[40] *Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me. 1985).

of punitive damages that you award must be reasonably related to the harm to Mr. Bell, including the harm caused by the reprehensibility of O'Reilly Auto Enterprises' conduct.  You may consider whether punitive damages are likely to deter or prevent other persons or corporations from performing wrongful acts similar to those O'Reilly Auto Enterprises is alleged to have committed.

Other factors you may consider in determining an appropriate amount of punitive damages include, but are not limited to, whether Mr. Bell was financially vulnerable; whether O'Reilly Auto Enterprises' conduct involved repeated actions or was an isolated instance; and whether the harm to Mr. Bell was the result of intentional malice, trickery, deceit, or mere accident.[41]  You may consider whether O'Reilly Auto Enterprises violated its obligation to, in good faith, engage in the interactive process with Mr. Bell that I described to you earlier.[42]  You may also consider O'Reilly Auto Enterprises' net financial worth.[43]

<div style="text-align:right">

Respectfully submitted,

</div>

Date: September 29, 2021

<div style="margin-left:40%">

*/s/ Chad T. Hansen*
Chad T. Hansen
Attorney for Plaintiff

*Employee Rights Group*
92 Exchange Street
Portland, Maine 04101
(207) 874-0905
chad@employeerightslaw.attorney

</div>

---

[41] *See* this Court's Pattern Jury Instruction 10.1.

[42]  *See* Seventh Circuit Model Jury Instruction 4.08.

[43]  *See Morse v. Southern Union Co.*, 174 F.3d 917, 925-26 (8th Cir. 1999) (defendant's financial net worth relevant for punitive damages); *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 616-17 (11th Cir. 2000)(same); and *Deters v. Equifax Credit Information Svcs., Inc.*, 202 F.3d 1262, 1273 (10th Cir. 2000)(same)

<u>CERTIFICATE OF SERVICE</u>

I certify that I made service of the foregoing document via the Court's electronic filing system on all counsel of record on the date below.


DATE:   September 29, 2021                 */s/ Chad T. Hansen*